UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | |
| | : | Crim. No. 07-225 (RBW/JMF) |
| AITOFELE T. F. SUNIA, | : | |
| TINI LAM YUEN, | : | |
| | : | |
| Defendants. | : | |

## GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS IN WHOLE OR IN PART COUNTS ONE THROUGH SIX OF THE INDICTMENT

Dated: July 25, 2008

WILLIAM M. WELCH II
Chief
MATTHEW L. STENNES
DANIEL A. SCHWAGER
KATHRYN H. ALBRECHT
Trial Attorneys
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Ave. NW, 12th Fl.
Washington, DC 20005
Tel.: 202-514-1412
matthew.stennes@usdoj.gov

**TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . I

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

I.      COUNT ONE SUFFICIENTLY ALLEGES AN APPROXIMATE BEGINNING OF
        THE CONSPIRACY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

II.     COUNT TWO SUFFICIENTLY ALLEGES THE "AGENT" ELEMENT OF
        SECTION 666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Section 666 Has Been Interpreted and Applied Broadly . . . . . . . . . . . . . . . . . . . 6

        B.      Both Sunia and Yuen Were Agents of the American Samoa Government – an
                Organization Receiving Federal Funds, for Purposes of Section 666 . . . . . . . . . 7

III.    THE FRAUD IN COUNT TWO WAS TIMELY CHARGED, AS IT WAS BOTH A
        CONTINUING COURSE OF CONDUCT AND A CONTINUING OFFENSE . . . . . . 11

        A.      Count Two is Timely Because it Alleges Fraud as a Continuing Course of
                Criminal Conduct Within the Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . 12

        B.      Count Two Alleges a Continuing Offense Where the Statute of Limitations
                Did Not Begin to Run Until Late 2003 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

IV.     BRIBERY IN COUNTS THREE AND FOUR WAS TIMELY CHARGED AS A
        CONTINUING COURSE OF CRIMINAL CONDUCT . . . . . . . . . . . . . . . . . . . . . . . 18

        A.      Count Three Timely Charges a Course of Conduct of Bribery of the Chief
                Procurement Officer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

        B.      Count Four Timely Charges a Course of Conduct of Bribery of the Director of
                Education . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

V.      COUNTS FIVE AND SIX SUFFICIENTLY ALLEGE VIOLATIONS OF
        18 U.S.C. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

A.      The Indictment Provides Sufficient Notice of the Crimes Charged . . . . . . . . . . 21

B.      The Allegations Regarding the False Statements are Legally and Factually
        Sufficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

        1.      *Law Does Not Require Additional Allegations* . . . . . . . . . . . . . . . . . . . 24

        2.      *Lies in This Case Are Capable Of Obstructing Justice* . . . . . . . . . . . . . 25

        3.      *Indictment Does Not Need To Prove the Endeavor to Obstruct* . . . . . . . 27

        4.      *Indictment Need Not Allege that Defendants Knew Legal Nature of
                Proceeding* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

# TABLE OF AUTHORITIES

## FEDERAL CASES

Nelson v. United States,
406 F.2d 1136 (10th Cir. 1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Russell v. United States,
369 U.S. 749 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Sabri v. United States,
541 U.S. 600 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

Salinas v. United States,
522 U.S. 52 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Thompson v. United States,
283 F. 895 (3d Cir. 1922) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

United States v. Abu-Shawish,
507 F.3d 550 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

United States v. Aguilar,
515 U.S. 593 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

United States v. Alhalabi,
443 F.3d 605 (7th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Alsobrook,
620 F.2d 139 (6th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Ansaldi,
372 F.3d 118 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Arthur,
544 F.2d 730 (4th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Barlow,
470 F.2d 1245 (D.C. Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Berardi,
675 F.2d 894 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

United States v. Berger,
     473 F.3d 1080 (9th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Bustamante,
     45 F.3d 933 (5th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 19

United States v. Carroll,
     332 F.Supp. 1299 (D.D.C. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v. Cisneros,
     26 F.Supp.2d 24 (D.D.C. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24, 27

United States v. Delano,
     55 F.3d 720 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. DiSalvo,
     34 F.3d 1204 (3d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

United States v. Edgar,
     304 F.3d 1320 (11th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Fruchtman,
     421 F.2d 1019 (6th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

United States v.Ganim,
     510 F.3d 134 (2d Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Giles,
     756 F.2d 1085 (5th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Harding,
     81 F.2d 563 (D.C. Cir. 1935) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States v. Harvey,
     2008 WL 2720719 (4th Cir. June 14, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Jackson,
     161 F.3d 24 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Jennings,
     160 F.3d 1006 (4th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

United States v. Jensen,
        608 F.2d 1349 (10th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16

United States v. King,
        200 F.3d 1207 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

United States v. Klat,
        156 F.3d 1258 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16

United States v. Lipscomb,
        299 F.3d 303 (5th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

United States v. Mangieri,
        694 F.2d 1270 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

United States v. McGoff,
        831 F.2d 1071 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

United States v. Nash,
        115 F.3d 1431 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Nunez,
        668 F.2d 10 (1st Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Pavloski,
        574 F.2d 933 (7th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

United States v. Phillips,
        219 F.3d 404 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

United States v. Safavian,
        528 F.3d 957 (D.C. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

United States v. Schurr,
        775 F.2d 549 (3d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

United States v. Shorter,
        809 F.2d 54 (D.C. Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

United States v. Smith,
        373 F.3d 561 (4th Cir.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

United States v. Stein,
        233 F.3d 6 (1st Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

United States v. Toussie,
        397 U.S. 112 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 17

United States v. Wood,
        6 F.3d 692 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24-27

United States v. Yashar,
        166 F.3d 873 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

## FEDERAL STATUTES

18 U.S.C. § 2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 10-11

18 U.S.C. § 201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

18 U.S.C. § 371 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

18 U.S.C. § 666 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3-4, 6-12, 17-19

18 U.S.C. § 666(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

18 U.S.C. § 1001(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

18 U.S.C. § 1503 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

18 U.S.C. § 1505 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21-23, 25-27

18 U.S.C. § 1515(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

18 U.S.C. § 3238 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## MISCELLANEOUS

False Statements Accountability Act of 1996,
        PL 104-292, October 11, 1996, 110 Stat 3459 . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

S. Rep. No. 98-225 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Seventh Cir. Fed. Crim. Jury Instr. (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Words & Phrases Judicially Defined, Second Series . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

## INTRODUCTION

NOW COMES THE UNITED STATES OF AMERICA, by and through its undersigned attorneys and respectfully opposes defendants' motion to dismiss and asks this Court to deny the motion in its entirety.

Defendants have moved to dismiss in whole or in part each count of the Indictment. Defendants claim in Part I that a conspiracy to violate 18 U.S.C. § 666 ("Section 666") could not have started before the defendants or their co-conspirators were formally sworn into the public positions most closely related to the offense conduct. However, because a conspiracy may begin prior to all elements being in place, the Indictment alleges that the conspiracy included agreements with others known and unknown to the grand jury, and the precise dates of the conspiracy are ultimately a matter for the jury, this argument must fail.

Defendants claim in Part II that as employees of the territorial legislature are not properly charged as agents for purposes of Section 666. Therefore, defendants argue, defendant Yuen cannot be charged in Count Two, and defendant Sunia cannot be charged in that Count to the extent the charge is based on conduct occurring before he became Treasurer in July 2001. Yet, because territorial senators and other legislative officials are indeed agents of the government of American Samoa, the criminal conduct was ongoing when defendant Sunia became Treasurer, and defendants are also properly charged with an alternative theory of liability under 18 U.S.C. § 2, this argument must also fail.

Defendants assert, in Parts III and IV, that the statute of limitations bars, in part, Counts Two, Three and Four because some of the criminal conduct occurred before September 6, 2002. However, this argument also fails because the crime charged in each of those counts constitutes a continuing course of criminal conduct which was ongoing within the statute of limitations and

because the charged offenses are considered continuing offenses.

Finally, defendants claim in Part V that the government has not sufficiently alleged, and can not possibly prove the elements of 18 U.S.C. §1505, as charged in Counts Five and Six. Yet, because defendants are confusing sufficiency of evidence arguments, which must be made after the government's case is presented at trial, with sufficiency of the indictment claims, while overstating the requirements of pleadings and understating what is actually pleaded in the current indictment, this argument must also be rejected.

## BACKGROUND

A federal grand jury indicted defendants Sunia and Yuen on September 6, 2007 on various charges centered on a single, ongoing project for the American Samoa Department of Education (hereinafter "ASDOE"): providing furniture to the American Samoa elementary and secondary schools. (Indictment ¶ 27.) As alleged in the Indictment, defendants, along with others known and unknown to the grand jury, agreed to divide this project among companies under their control, and later to "cut in on the deal" another public official in the form of a bribe. (Indictment ¶ 28d.) This fraudulent scheme violated several territorial procurement and conflict of interest laws and was intended to avoid competitive bidding. (Indictment ¶¶ 22-25.)

Worse still, defendants were not only trusted elders in their communities and chiefs in their villages, but by the time the conspiracy began, both defendants either already were serving, or had recently been chosen to serve as high-ranking public officials. (Indictment ¶¶ 8-17.) For nearly the entire duration of the conspiracy, defendants held positions with oversight over some aspect of the fiscal welfare of the territory. (Indictment ¶¶ 9, 12, 15-16.)

At the very beginning of the conspiracy, defendant Sunia was serving as counsel for the

legislative body of American Samoa which oversees spending and regulations on the islands. (Indictment ¶ 11.) He was subsequently appointed by his brother, then-Governor of American Samoa, to become the Treasurer for the American Samoa Government (hereinafter "ASG"). In that position, defendant Sunia was the head of the department which processed paperwork and payments for the fraudulent ASDOE furniture project. (Indictment ¶¶ 10, 12.)

When the conspiracy began, defendant Yuen had been appointed to become the territorial senator for his village. (Indictment ¶ 15.) The territorial senate has oversight authority over the ASDOE. In fact, the evidence at trial will show that the Senate has held hearings, in which Yuen participated, investigating this very scheme.

Count One charges defendants with a conspiracy to defraud the ASG, in violation of 18 U.S.C. §§ 371 and 666. (Indictment ¶ 26.) Count Two charges defendants with a substantive violation of Section 666, as well as the aiding and abetting statute, 18 U.S.C. § 2. (Indictment ¶ 49.) This count charges defendants with obtaining approximately $775,000 from the ASG by means of fraud. The count charges that both defendants were agents of the ASG, criminally liable as both principals and as aiders and abetters.

Count Three charges the bribery prong of Section 666. (Indictment ¶ 51.) This count charges that both defendants agreed to provide the Chief Procurement Officer (hereinafter "CPO") of American Samoa, co-conspirator Fa'au Seumanutafa, a share of the illegal project in exchange for his failure to enforce the procurement regulations, thereby allowing the scheme to continue. This bribe constituted a continuing course of conduct, as the CPO continued to be paid by the ASG for his illegally split invoices while defendants continued to reap the benefit of uninterrupted, fraudulently-obtained payments, to which he would not object.

-3-

Count Four charges defendant Yuen violated with the bribery prong of 18 U.S.C. § 666 by providing a series of gifts to his co-conspirator, the Director of the ASDOE ("the Director"), Kerisiano Sili Sataua, in consideration for his ongoing complicity in the scheme. (Indictment ¶ 53.) Again, these bribe payments occurred as part of a continuing course of criminal conduct.

Counts Five and Six charge each defendant respectively with obstructing an ongoing United States Department of Education investigation into the use of its grant funds. (Indictment ¶¶ 54-63.) The obstruction counts charge that defendants voluntarily submitted to interviews as part of the ongoing investigation and that they corruptly endeavored to obstruct those investigations by providing false information.

## **DISCUSSION**

I.    **COUNT ONE SUFFICIENTLY ALLEGES AN APPROXIMATE BEGINNING OF THE CONSPIRACY.**

Defendants argue that Count One must be dismissed to the extent it is based in part on a time period before defendants or their coconspirators had assumed particular government positions. The Indictment alleges that the conspiracy lasted from *"in or about* late-2000 through *in or about* early-2004." (Indictment ¶ 26 (emphasis added).) The language "in or about" is frequently and properly used in indictments to estimate the dates of particular events, such as the formation of a conspiracy, when a precise date is unknown or indeterminable to the grand jury. Thompson v. United States, 283 F. 895, 898 (3d Cir. 1922) ("The common understanding of the words 'on or about' when used in connection with a definite point in time, is that they do not put the time at large, but indicate that it is stated with appropriate accuracy.") (quoting 3 Words & Phrases Judicially Defined, Second Series 272). The phrase appropriately covers any date or

-4-

time period within reasonable limits of the offense conduct.  See, e.g., United States v. Giles, 756

F.2d 1085, 1086 (5th Cir. 1985) (rejecting the defendant's contention that the indictment was

insufficient because it failed to allege the specific dates of the conspiracy); United States v.

Schurr, 775 F.2d 549, 559 (3d Cir. 1985) (declining to adopt a per se rule requiring the

government prove a specific offense date); United States v. Nunez, 668 F.2d 10, 11 (1st Cir.

1981) ("It is hornbook law that 'great generality in the allegation of the date is allowed'.").

  Consistent with the Indictment allegations, the evidence at trial will show that, sometime

in late-2000 or early-2001, employees of the ASDOE identified a need for library furniture and

school bookshelves.  (Indictment ¶ 30.)  Then, sometime in late-2000 or early-2001, the

defendants and others, including the individuals who were about to become, or who had just

become Director of Education and Chief Procurement Officer, conspired to circumvent

procurement regulations and assign the work to companies under their control.  (Indictment ¶¶

30-36.)  Certain conversations and events relevant to the formation of the conspiracy occurred

during that general time frame.  By using the language "in or about late-2000," the grand jury

reasonably captured the time during which the conspiracy had its origin.  The fact that the

Director or the CPO had not yet assumed their formal positions until January 4, 2001 and January

22, 2001, respectively, does not call into question the temporal allegations in the indictment, let

alone render fatal the conspiracy count.

  Further, the question as to precisely when the conspiracy began is a matter for

determination by the jury based on the evidence at trial.  Indeed, the broad allegation that

defendants "us[ed] their positions in the ASG and relationships with the Director of Education

and Chief Procurement Officer" to obtain fraudulently the furniture work does not fail based on

the possibility that some of the conspiratorial objectives could have taken place in the weeks prior to their formally assuming those positions. A conspiracy may begin prior to all elements being in place. Cf. United States v. Harding, 81 F.2d 563, 565 (D.C. Cir. 1935) ("It is not essential . . . to show that all of the conspirators participated in the conspiracy at its beginning, nor is it essential that all contribute alike either to the making of the scheme or to its fulfillment."). Both defendants were then and are now important figures in the ASG power structure. Sunia's brother had just won reelection as Governor, and Yuen had then already been selected by his village to serve as a territorial senator. The Director and the CPO were similarly part of that power structure. In fact, one of the reasons the Director was tapped to lead the ASDOE was his close relationship with the Sunia family. The evidence at trial will support the allegation that the charged conspiracy in fact had its origins *in or about* late-2000. Defendants' argument is simply not a basis on which to dismiss Count One.

## II.    COUNT TWO SUFFICIENTLY ALLEGES THE "AGENT" ELEMENT OF SECTION 666.

### A.    Section 666 Has Been Interpreted and Applied Broadly

Section 666, proscribing fraud and bribery concerning programs receiving federal funds, has become one of the most frequently used tools to combat state and local government corruption.[1] To prove a violation of the statute's fraud provision, the government needs to prove that (1) the defendant was an agent of an organization; (2) in a one-year period, the organization

---

[1] Because of the unique "federal" character of Washington, D.C.'s local government, there is a dearth of case law interpreting Section 666 in this Court or the D.C. Circuit. Put simply, there is rarely need to utilize the statute in this Circuit because more traditional federal corruption statutes, such as 18 U.S.C. § 201, are more readily available to prosecutors. Thus, more so than with other statutes, extra-circuit case law is particularly informative here.

received in excess of $10,000 in federal funds; (3) the defendant embezzled, stole, obtained by fraud, converted to another, or intentionally misapplied money or property; (4) the money or property was under the care, custody or control of the organization; and (5) the money or property had a value of $5,000 or more.  See, e.g., Seventh Cir. Fed. Crim. Jury Instr. § 8 at 178 (1998) (instruction for 18 U.S.C. § 666(a)(1)(A)).  Passed in 1984, Section 666 was designed generally to "protect the integrity of the vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery."  S. Rep. No. 98-225, at 370 (1983).

During the statute's first decade, courts wrestled with the scope of Section 666, particularly the question of what was the required nexus between the particular federal funds involved and the corrupt conduct.  In two decisions, Salinas v. United States, 522 U.S. 52 (1997) and Sabri v. United States, 541 U.S. 600 (2004), the Supreme Court unanimously upheld a broad interpretation and application of the statute.  Specifically, in Salinas, the Court held that the statute does not require the government to prove that the corrupt conduct had any particular influence on federal funds.  522 U.S. at 61.  In Sabri, the Court more broadly affirmed the constitutionality of the statute, despite it not requiring any particular relationship between the federal money and the corrupt conduct.  541 U.S. at 1945-46.  Read together, Salinas, Sabri, and subsequent case law support a broad interpretation of Section 666 – including the use of the statute in this case.  Tellingly, defendants neither cite nor discuss either Salinas or Sabri.

     B.     Both Sunia and Yuen Were Agents of the American Samoa Government – an Organization Receiving Federal Funds, for Purposes of Section 666.

The ASG is very small as compared to typical state or territorial governments.  Evidence at trial will show that many officials in positions of power within the ASG comprise a tight-knit

group of political and social allies who work closely within the power structure of the territory to

consolidate power and exert their influence. As explained above, both Sunia and Yuen were part

of this power structure. As Counsel to the Fono (from February 1999 through July 2001),

Treasurer (from July 2001 through April 2003), and Lieutenant Governor (from April 2003 to the

present), Sunia was at each stage, and thereby throughout the entire fraud scheme, serving as an

agent of the ASG. (Indictment at ¶¶ 8-11.) In each of these positions, Sunia had power and

influence over various government functions and lower level employees, including employees he

eventually used to propagate this scheme. (Indictment ¶ 12.) Similarly, as a longtime member of

the Fono, Yuen was a high-ranking, respected village chief who served on powerful Fono

committees, debated and passed laws, and had close relationships with others in powerful ASG

positions. Section 666 was specifically designed to capture bribery and fraud by these types of

government officials.

   Defendants emphasize the statute's use of the word "such" as modifying the particular

"organization, government, or agency" receiving the federal funds, arguing that the defendant

must therefore be an agent of the particular subsection or component of the defrauded entity.

(Def. Mot. 11.) However, defendants' argument ignores that the statute clearly allows for

application to "such. . . government," which in this case is the ASG. See, e.g., United States v.

Lipscomb, 299 F.3d 303 (5th Cir. 2002) (affirming conviction of city council member for

accepting bribes from taxicab companies when the city's transportation department received

federal funds); United States v. Edgar, 304 F.3d 1320 (11th Cir. 2002) (affirming convictions of

defendants who were agents of city hospital when the city overall received $56 million in federal

funds); United States v. Delano, 55 F.3d 720 (2d Cir. 1995) (holding that defendant, an employee

of the Buffalo Park Service, was an agent under Section 666 because the City of Buffalo received more than $10,000 in federal funds). The Indictment alleges, and the evidence will show, that both Sunia and Yuen were at all times agents of the ASG, "[were] authorized to act on behalf of [that government]," and "had [the] ability to control" its acts. United States v. Phillips, 219 F.3d 404, 411 (5th Cir. 2000). Put simply, defendants were agents of the ASG and they defrauded the ASG. That is all that is required.

Defendants cite two cases, United States v. Abu-Shawish, 507 F.3d 550, 556 (7th Cir. 2007) and Phillips, 219 F.3d at 411, for the proposition that a defendant charged under Section 666 must be an agent of the particular subsection or component of the defrauded entity. (Def. Mot. 11.) Defendants argue that this compels dismissal of Count Two to the extent that defendants were agents of the Fono, rather than the ASDOE or Treasury. This argument is misplaced. In Abu-Shawish, the government's Section 666 charge was insufficient because the defrauded entity was the City of Milwaukee, while the defendant was an agent of "Arabian Fest," an independent, non-profit organization. In this case, however, the Indictment alleges that both defendants were agents of the ASG – the very entity alleged to have been defrauded. (Indictment at ¶¶ 26a, 49.) The Phillips court engaged in an exhaustive, *post-conviction* analysis of the relationship of the defendant tax assessor's position vis-a-vis the defrauded Louisiana parish government. 219 F.3d at 411. If the Court decides to engage in any analysis of the Fono's particular role in the ASG and its relationship to the executive departments serving as the locus of the fraud, such an analysis should take place in a Rule 29 or post-trial setting, after the evidence has been presented, rather during this pre-trial stage. The government is confident that its allegations are sufficient and the evidence will be sufficient to meet any jury instruction on an

"agency" requirement.

Sabri taught us that it is insignificant specifically where within a defrauded government entity that particular defendant worked and where the particular federal funds were housed. Justice Souter, writing for the Sabri Court, emphasized that, since fraud or bribery affecting one part of a government entity naturally affects another, there is no particular need to tie the defendant directly to the federal funds:

> Money is fungible, bribed officials are untrustworthy stewards of federal funds, and corrupt contractors do not deliver dollar-for-dollar value. *Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there.* And officials are not any the less threatening to the objects behind federal spending just because they may accept general retainers . . . It is certainly enough that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest.

Sabri, 541 U.S. at 606 (emphasis added). This principle is particularly important here. Both defendants were serving at nearly all relevant times in positions of authority within the defrauded entity – the ASG. Count Two should not be dismissed merely because defendants happened to be, for all (Yuen) or part (Sunia) of the time, assigned to a separate component of the ASG.

As for defendant Sunia in particular, he served as Treasurer for all but a few months of the fraud scheme. In his capacity as Treasurer, Sunia "supervised all of the fiscal activities of the ASG, including accounts payable, asset management, and tax issues." (Indictment at ¶ 12.) In this role, Sunia was unquestionably an "agent" of an entity receiving at least $10,000 in federal funds, for purposes of Section 666. (Indictment at ¶ 7.) There is no basis to dismiss this charge.

Finally, both defendants are charged in the alternative in Count Two with the "aiding and abetting" theory of liability set forth in 18 U.S.C. § 2. The jury will be instructed that each defendant can be found guilty of violating Section 666 either in a role as a "principal" or by

-10-

"aiding and abetting" the criminal conduct. Thus, even if defendants weren't in agent positions during the entirety of the scheme, the jury could nonetheless find them guilty under an 18 U.S.C. § 2 theory. Thus, Count Two should be preserved as to both defendants.

## III.    THE FRAUD IN COUNT TWO WAS TIMELY CHARGED, AS IT WAS BOTH A CONTINUING COURSE OF CONDUCT AND A CONTINUING OFFENSE

Defendants argue that the Section 666 Fraud charge should be dismissed in part because it is not a continuing offense and some of the relevant offense conduct occurred outside of the statute of limitations. (Def. Mot. 14.) However, because the Indictment facts supporting Count Two charge a continuing course of criminal conduct, it is sufficient that any criminal act occur within the statute of limitations period. Moreover, because Section 666 Fraud is a continuing offense, the statute of limitations is tolled until the final criminal act. Therefore, Count Two is not time-barred in any respect, and the criminal scheme has been properly charged as one count.

The applicable statute of limitations provides that "except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." 18 U.S.C. § 3238 (2000). The primary purpose behind the statute of limitations is to prevent an individual from having to defend himself against "charges when the basic facts may have become obscured by the passage of time." United States v. Toussie, 397 U.S. 112, 114 (1970). Therefore, the crime is normally deemed committed and the statute of limitations begins to run when all elements of the crime have occurred. United States v. McGoff, 831 F.2d 1071, 1078 (D.C. Cir. 1987).

However, there are two situations when the statute of limitations extends to cover

criminal conduct presumptively outside of the five year limitation: continuing courses of criminal conduct or continuing offenses.

      A.    Count Two is Timely Because it Alleges Fraud as a Continuing Course of Criminal Conduct Within the Statute of Limitations.

Defendants are charged in Count Two with Section 666 Fraud based on their orchestrated receipt of $775,000 in connection with production of furniture for the ASDOE. (Indictment ¶ 49.) This scheme involved the fraudulent division of work on particular school furniture projects, a pattern of artificially-divided procurement documents, and what amounted to dozens of "installment" payments on the same project. The defrauded entity, the type of furniture, and the fraudulent documentation remained constant throughout the scheme. Further, the participants remained the same nearly from start to finish. Each of these factors is a hallmark of a continuing course of fraudulent conduct. Because Count Two sets forth a continuing course of criminal conduct, it is sufficient for statute of limitations purposes that criminal conduct continued into 2003 for both defendants. Therefore, the entirety of conduct under Count Two is timely.

In order for separate criminal acts to constitute a single course of criminal conduct, they must "bear a relationship to one another" and all form part of an extended criminal act over time.[2] United States v. Berardi, 675 F.2d 894, 899 (7th Cir. 1982) (citing United States v. Pavloski, 574 F.2d 933, 936 (7th Cir. 1982)). The question of whether criminal activity constitutes a course of conduct is "inherently fact intensive" and depends primarily on how the

_____

[2] Requiring this close relationship between the acts constituting a continuing course of conduct avoids the danger that such charges would be duplicitous and charge more than one criminal act in a single count. See United States v. Mangieri, 694 F.2d 1270, 1281 (D.C. Cir. 1982) (holding duplicity is the joining in a single count of an indictment two or more criminal acts).

-12-

conduct is charged. United States v. Jackson, 161 F.3d 24, 28 (D.C. Cir. 1998).

In this circuit, a series of criminal acts may be charged in a single count when the acts "represent a continuing scheme that occurred within a short period of time and that involved the same defendant." United States v. Klat, 156 F.3d 1258, 1266 (D.C. Cir. 1998) (quoting United States v. Alsobrook, 620 F.3d 139, 142 (6th Cir. 1980)). The D.C. Circuit has never defined precisely what constitutes "a short period of time," but case law prior to Klat and from other circuits supports that this is also a fact-specific inquiry, looking often at temporal space between criminal acts. See Klat, 156 F.3d at 1266 (affirming the joinder into one count of several instances where the defendant threatened the clerk and justices of the Supreme Court during a six month period). The D.C. Circuit held in United States v. Shorter that a conviction on a single count of income tax evasion between the years 1972 and 1983 was properly charged as a continuing course of conduct. 809 F.2d 54, 57 (D.C. Cir. 1987) (affirming the one count conviction because "the underlying basis of the indictment is an allegedly consistent, long-term pattern of conduct directed at the evasion of taxes."); see also, Berardi 675 F.2d at 898-99 (approving charging of several criminal acts of obstruction in a single count and stating "when the offenses joined bear a relationship to one another and may be said to constitute a continuing course of conduct, the 'distinct and separate' test should be applied . . . with a view toward serving the purposes of the prohibition against duplicity") (quoting Pavloski, 574 F.2d at 936).

Concerns with judicial efficiency and jury confusion support that overarching schemes should be indicted in a single count. If individual criminal acts were indicted separately while still forming part of a larger scheme of criminal conduct, it would have the dual effect of unnecessarily lengthening trials and of confusing the jury as evidence is presented on each count

-13-

individually.  Indeed, were the government to have charged defendants with a series of individual acts in this case constituting separate counts, the Indictment could have conceivably included more than two dozen counts.  If the government had done so, defendants would have certainly claimed multiplicity because the indictment would have covered individual instances of criminal conduct which in truth constitute one greater criminal act.  See United States v. Ansaldi, 372 F.3d 118, 125 (2d Cir. 2004) (holding indictments charging a single offense in different counts are multiplicitous).

Because the charged conduct constitutes a continuing course of criminal conduct, Count Two is timely so long as some part of the criminal conduct occurred within the statute of limitations period.  See United States v. Jensen, 608 F.2d 1349, 1355 (10th Cir. 1979) ("[T]he statute of limitations is no bar if there is an ongoing scheme continuing into the five year period.") (citations omitted); see, e.g., United States v. DiSalvo, 34 F.3d 1204, 1219 (3d Cir. 1994) (affirming the defendants convictions for extortion relating to a loan during the years 1985 to 1987 when the indictment was returned in 1991).  This is dependant on an allegation of a common scheme in which at least one act of the scheme occurs within the five year period. United States v. Bustamante, 45 F.3d 933, 942 (5th Cir. 1995) (affirming the defendant's conviction for accepting gratuities over a period of years because some of gratuities occurred within the five year period of the statute of limitations).

Defendants rely almost exclusively on the Seventh Circuit's decision in United States v. Yashar for the proposition that a continuing course of criminal conduct does not extend the statute of limitations.  166 F.3d 873 (7th Cir. 1999).  However before holding that the statute of limitations could not be so extended, the Seventh Circuit admitted that there was disagreement

-14-

among the circuits as to whether a continuing course of conduct should extend the statute of limitations. Id. at 878-79. Driving the Seventh Circuit's decision was a concern that a prosecutor would charge several instances of criminal conduct as a single offense to evade the statute of limitations. Id. However, a conscientious application of the rule against duplicity will sufficiently screen any attempt by the government to associate two unrelated acts for the purpose of avoiding the statute of limitations without contradicting the general agreement among the circuits that the entirety of a single course of criminal conduct should not evade prosecution simply because it straddles the statute of limitations period.

As set forth in the Indictment, beginning in late 2000 and continuing through 2003, defendants and their coconspirators personally enriched themselves by fraudulently dividing school furniture orders among the companies they controlled. (Indictment ¶¶ 27-28a.) Defendants structured the invoices so that each would be under the $10,000 threshold, thus circumventing the open-bidding requirement. (Indictment ¶ 28b.) However, the overall project was in excess of $10,000, and invoices submitted on the same day for the same type of furniture at the same school, when aggregated together, were themselves nearly always much greater than the $10,000 threshold. As an example, on April 29, 2002, defendant Yuen's company billed a total of $14,100 for 120 bookcases for the same elementary school split into four separate invoices, none over $10,000.[3] (Indictment ¶ 37w.)

The Indictment charges that this pattern continued over three years for both defendants' companies. The first invoice submitted by defendant Sunia's company, Samoa Furnishing and

_____

[3] In total, there were twenty-seven instances when invoices submitted on the same day aggregated to over $10,000. (Indictment ¶¶ 37d, e, g, h, i, j, k, n, o, q, s, t, u, v, w, x, z, cc, ee, ff, gg, hh, jj, kk, mm, nn, qq.)

Handicrafts, Inc. ("SF&H"), was on October 11, 2000 for 60 high school desks in the amount of

$8,100. (Indictment ¶ 37a.) The final two invoices submitted by SF&H were on December 23,

2003 for 46 and 39 kindergarten desks and for the amounts of $6,210 and $5,265. (Indictment ¶

37qq) Overall, the Indictment alleges that SF&H submitted forty-seven invoices over three years

for a total gain of $295,287. (Indictment ¶¶ 37, 39.) The first two invoices submitted by Tini P.

Lam Yuen Co. ("TLY") were on March 14, 2001 for 25 bookshelves and 35 bookshelves

respectively and in the amounts of $5,875 and $8,225 respectively. (Indictment ¶ 37d.) The

final invoice submitted by TLY was submitted on June 18, 2003 for office armchairs for a total

of $2,400. (Indictment ¶ 37oo.) According to the charges, TLY submitted thirty-two invoices

for a total of $228,000 over two and a half years.

     The repetitive nature of the furniture orders and structuring of invoices and payments

demonstrates that the fraud was perpetrated by means of a single, continuing course of conduct.

These were not separate, self-contained criminal acts, but repeated installment payments in an

ongoing fraudulent scheme to defraud the ASG.[4] Defendants engaged in a sustained effort to

defraud the ASG by structuring furniture orders to circumvent the competitive bidding

requirements, and by ignoring conflict of interest protections, and the three years that the scheme

endured - with submission of fraudulent invoices approximately every six weeks (see Indictment

¶¶ 23-25 and 37.) - is a sufficiently short period for an ongoing scheme. See Klat, 156 F.3d at

1266.

     Further, as the final invoices submitted by the Defendants, December 13, 2003 for

---

[4] Courts have accepted that fraud may be committed as a continuing course of conduct.
See, e.g., Jensen, 608 F.2d at 1355 (holding that securities fraud was committed as a continuing
course of conduct).

defendant Sunia and June 18, 2003 for defendant Yuen, were well within the statute of

limitations period, calculated from the September 6, 2007 indictment date, the entirety of the

continuing course of criminal conduct was timely charged.

> B.    Count Two Alleges a Continuing Offense Where the
>       Statute of Limitations Did Not Begin to Run Until Late 2003

Defendants' arguments concerning Count Two are further unavailing because Section 666

Fraud is a continuing offense which tolls the statute of limitations until the final criminal act.

The final acts of the scheme were completed in 2003, well within the statute of limitations.

Offenses are "continuing" where Congress intended to extend the statute of limitations

through explicit language or where "the nature of the crime involved is such that Congress must

have assuredly intended that it be treated as a continuing one." Toussie, 397 U.S. at 115.

Continuing offense is a "term of art" which is to be applied in limited situations, namely when

the illegal conduct "perdures" past the completion of the initial criminal conduct and necessarily

endures over time. McGoff, 831 F.2d at 1078. Therefore, to determine whether an offense is a

continuing one, the Court looks to the nature of the crime and statutory language. If Congress

intended the offense to be a continuing offense, then the statute of limitations does not run until

the last day the offense is committed. Id. at 1079.

No court has addressed directly whether Section 666 Fraud is a continuing offense[5];

however, several circuits have addressed other forms of fraud and concluded that the secretive,

sustained pattern of fraud supports that fraud can be a continuing offense. See United States v.

---

[5] The government in Yashar argued that Fraud under Section 666 was committed as a
course of conduct, so the Seventh Circuit did not address whether it could constitute a continuing
offense. 166 F.3d at 876.

Stein, 233 F.3d 6, 18-19 (1st Cir. 2000) (holding that bankruptcy fraud is necessarily a

continuing offense because of its concealed nature); United States v. Nash, 115 F.3d 1431, 1441

(9th Cir. 1997) (holding bank fraud is a continuing offense because it involves the "execution of

an overall scheme"); United States v. Smith, 373 F.3d 561, 567 (4th Cir.2004) (per curiam)

(holding embezzlement from the Social Security Administration was a continuing offense

because "embezzlement is the type of crime that, to avoid detection, often occurs over some time

and in relatively small, but recurring, amounts").

Section 666 Fraud, is similarly a continuing offense because the conversion of property

by fraud typically occurs as part of a scheme to defraud. As the Fourth Circuit held in Smith,

fraud committed against government programs, to avoid detection, requires secretive fraudulent

activity over a period of time. Further because "obtains by fraud" is associated with

embezzlement and stealing in the statute, both continuing offenses, the canon of *noscitur a sociis*

argues that Congress also intended for fraud in the statute to be a continuing offense. See United

States v. Barlow, 470 F.2d 1245, 1250 (D.C. Cir. 1972) (holding larceny is a continuing offense).

Therefore both the statutory language and the case law support that fraud endures over time and

can be a continuing offense. Thus, as explained above, the scheme was timely charged well

within the statute of limitations.

### IV.   BRIBERY IN COUNTS THREE AND FOUR WAS TIMELY CHARGED AS A CONTINUING COURSE OF CRIMINAL CONDUCT

Defendants also argue that Counts Three and Four charging Section 666 Bribery must be

dismissed as to the acts which occurred outside the statute of limitations. (Def. Mot. 20-21.)

Similar to Count Two however, Counts Three and Four charge a continuing course of criminal

conduct within the statute of limitations. The circuits have generally held that bribery can form a continuing course of criminal conduct when there is a "course of conduct of favors and gifts flowing to a public official *in exchange for* a pattern of official actions favorable to the donor." United States v. Jennings, 160 F.3d 1006, 1014 (4th Cir. 1998) (affirming a conviction for bribery under Section 666 when there was a pattern of gratuities to an official of the Maryland Housing Department) (emphasis in original) (quoting United States v. Arthur, 544 F.2d 730, 734 (4th Cir. 1976)); accord United States v. Harvey, 2008 WL 2720719, at *6 (4th Cir. June 14, 2008); United States v.Ganim, 510 F.3d 134, 149 (2d Cir. 2007). As with other course of conduct offenses, courts have extended the statute of limitations to cover the entirety of a pattern of bribes and official acts so long as part of the criminal conduct occurred during the statute of limitations period. Bustamante, 45 F.3d at 942. Therefore, as explained below, Counts Three and Four timely charge single bribery counts.

A.    Count Three Timely Charges a Course of Conduct of
      Bribery of the Chief Procurement Officer

The Indictment in Count Three charges that the defendants offered a thing of value to the CPO, Fa'au Seumanutafa, in consideration for his role in facilitating the fraudulent scheme. (Indictment ¶ 51.) Specifically, defendants allowed the CPO to participate in the same structured contracting scheme they were using to defraud the ASG. (Indictment ¶ 28d.) In return, the CPO approved each of the illegal invoices for payment and allowed each co-conspirator's fraud to continue, in violation of several provisions of the procurement regulations. (Indictment ¶¶ 23-25, 28(iv) and 33.) In March 2001, the ASDOE prepared a memorandum formalizing the distribution of the projects among the three companies. (Indictment ¶ 36.) The CPO's company,

-19-

Samoa Wood Products, first submitted an invoice for its work on April 5, 2001 and continued to submit invoices collecting on his "bribe" payments until March 18, 2003. (Indictment ¶¶ 37g, mm.) Overall, the CPO received $251,400 from the government of American Samoa as part of the scheme from twenty-two invoices over two years. (Indictment ¶¶ 37, 39.)

The bribery scheme involving the CPO is properly charged as a single count continuing course of criminal conduct. The lucrative furniture payments to the CPO fit the description of bribery committed as a course of conduct: a series of payments provided with the intent to influence or reward a government agent in connection with a government transaction, in this case, the CPO's continued acquiescence that the fraudulent scheme could proceed by his approval of fraudulent procurement requests. The two year bribery installments also spanned a relatively short period of time, during which they were consistently and methodically paid to the CPO by the Treasury (the department which defendant Sunia led during nearly the entire scheme). Because the last alleged payments to the CPO took place in 2003, Count Three is timely and the motion to dismiss should be denied.

> B.     Count Four Timely Charges a Course of Conduct of
>        Bribery of the Director of Education

Count Four charges that defendant Yuen provided cash and home improvements to the Director in order to influence and reward him for awarding the no-bid furniture orders to the defendants' companies. (Indictment ¶ 53.) After agreeing in March 2001 to split the furniture orders among Yuen, Sunia, and the CPO's companies, Yuen began to give the Director cash payments and home improvements in consideration for his official actions. Between the months of May and September 2001, Yuen directed his employees to install new kitchen and bathroom

-20-

cabinets and counter tops free of charge in the Director's home with a value of approximately

$2,500. (Indictment ¶ 42.) In June 2002, Yuen met with the Director in the Honolulu, Hawaii

airport and gave him $1,000 cash as consideration for his continuing role in approving the

scheme. (Indictment ¶ 45.) Again, in December 2002, Yuen met with the Director and provided

him $300 cash for his continuing cooperation on the furniture projects. (Indictment ¶ 46.)

The series of payments to the Director, like those to the CPO, constituted a continuing

course of criminal conduct. The payments had a unifying purpose and were not piecemeal

payments for individual official acts, as all of the payments were aimed at rewarding the

continued cooperation and funneling of furniture work from the ASDOE to the defendants and

the CPO. Further, they were done within a condensed amount of time where each related to the

overall goal of the fraud. Because the final payment in December 2002 was within the statute of

limitations, Count Four is timely.

## V.    COUNTS FIVE AND SIX SUFFICIENTLY ALLEGE VIOLATIONS OF 18 U.S.C. § 1505

Defendants finally raise several objections to Counts Five and Six of the Indictment.

Defendants argue that the two counts of Obstruction of Justice fail to allege certain elements and

also that the alleged false statements could not possibly have had an obstructive effect.

Defendants' arguments fail because they overstate what must be alleged in an indictment and

understate what has been alleged here.

### A.    The Indictment Provides Sufficient Notice of the Crimes Charged

To determine the sufficiency of an indictment, the Supreme Court has set out a two-part

test: first, whether the indictment contains the elements of the offense intended to be charged and

sufficiently apprises the defendant of what he must be prepared to meet, and second, in case any

other proceedings are taken against him for a similar offense, whether the record shows with

accuracy to what extent he may plead a former acquittal or conviction. <u>United States v. Cisneros</u>,

26 F. Supp. 2d 24, 49 (D.D.C. 1998) (citing <u>Russell v. United States</u>, 369 U.S. 749, 763-64

(1962) (internal quotes and citations omitted)).

      While an indictment must charge the elements of the offense, "it is not necessary to spell

out each element if each is present in context."  <u>United States v. Alhalabi</u>, 443 F.3d 605, 611 (7th

Cir. 2006).  An indictment "should be read in its entirety, construed according to common sense,

and interpreted to include facts which are necessarily implied." <u>United States v. Berger</u>, 473 F.3d

1080, 1104  (9th Cir 2007) (citing <u>United States v. King</u>, 200 F.3d 1207, 1217 (9th Cir 1999)).

      As has been noted in this district, "there are no 'magic words' which make an indictment

sufficient; rather, the court must determine whether the accused is apprised of the 'nature of the

charges against him' and 'to notify [him] of the extent of his alleged culpability.'" <u>Cisneros</u>, 26

F. Supp. 2d at 49, (citing <u>Nelson v. United States</u>, 406 F.2d 1136, 1136 (10th Cir. 1969)).

Finally, in most circumstances a recitation of the statutory language along with sufficient facts to

provide necessary notice to the defendant are sufficient to meet constitutional muster. <u>Id</u>. at 49.

      The relevant section of 18 U.S.C. § 1505 provides:

> Whoever corruptly, ... influences, obstructs, or impedes or
> endeavors to influence, obstruct or impede the due and proper
> administration of the law under which any pending proceeding
> is being had before any department or agency of the United
> States ... shall be fined under this title ...

The term "corruptly" was defined by Congress in the False Statements Accountability Act of

1996, enacted 3 years after the opinion in <u>United States v. Wood</u>, 6 F.3d 692 (10th Cir. 1993),

-22-

relied upon in the defense motion, through the addition of subsection (b) to 18 U.S.C. § 1515(b).

The statute states, in relevant part:

> (b) as used in section 1505, the term 'corruptly' means acting
> with an improper purpose, personally or by influencing another,
> including making a false or misleading statement, or
> withholding ..... a document or other information.

PL 104-292, October 11, 1996, 110 Stat 3459.

Counts Five and Six of the Indictment each contain five paragraphs. The first four

paragraphs are nearly identical, first incorporating 47 previous paragraphs of the Indictment, and

then describing the nature of the investigation being obstructed, and the context of the allegedly

false statements. Specifically, the Indictment alleges that the statements were made in the

following context: "as part of the above-described joint investigation into fraud, waste and abuse

in American Samoa [DEFENDANT] submitted to a voluntary interview with federal law

enforcement agents . . ." (Indictment, ¶¶ 57, 62.)

Those paragraphs are followed in each count with a recitation of the relevant language of

the statute, filled in with a repetition of the specific facts, as such:

> On or about ..., in the territory of American Samoa
> [DEFENDANT] defendant herein did corruptly endeavor to
> influence, obstruct and impede the due and proper administration
> of the law under which a proceeding, to wit an investigation of
> allegations of fraud, waste and abuse within an entity receiving
> funds from the United States, was pending before the U.S.
> Department of Education, by making materially false and
> misleading statements to federal agents engaged in such
> proceeding, specifically, that [specific false statements].

(Indictment ¶¶ 58, 63.)

The Indictment therefore incorporates all the necessary elements in the statute and also

describes with particularity the statements alleged to be false, the time and place of the

statements, the specific nature and character of the investigation alleged to have been obstructed and the agency conducting that investigation. The Indictment also clearly alleges that the defendants corruptly endeavored to obstruct an investigation into allegations of fraud, waste, and abuse by the ASDOE, and that defendants volunteered to be interviewed as part of that investigation. These allegations incorporate sufficiently the element that their actions were knowing, and no requirement of more formalistic and precise language may be demanded by defendants. See Cisneros, 26 F.Supp.2d at 49.

Under these circumstances, the defendants can not, and in fact do not, claim any surprise or doubt about what they are charged with, let alone that they lack constitutionally sufficient notice to protect them from double jeopardy, to understand the charges against them or to mount a defense. Id. Therefore Counts Five and Six are sufficient.

B.    The Allegations Regarding the False Statements are Legally and Factually Sufficient

1.    *Law Does Not Require Additional Allegations*

Defendants claim that the Indictment will only be sufficient if the allegations "demonstrate" the necessary nexus between the statements at issue and the proceeding they obstructed, or "establish" the natural and probable effect of the lies. (Def. Mot. 21-22.) This argument is based on two cases which deal with a different statute that requires an additional level of proof, and both of which were decided after evidence was presented at trial. (Def. Mot. 22.)

Defendants' reliance on these two cases is misplaced. United States v. Aguilar, 515 U.S. 593 (1995) and United States v. Wood, 6 F.3d at 692, both deal with the proposition that, in a

-24-

prosecution for violations of 18 U.S.C. § 1503, false statements to an investigating agent must have been made in a context in which the defendants knew or understood that their statements would be conveyed to and would impede a grand jury or court and that mere interviews were not sufficient judicial proceedings.[6]

Under 18 U.S.C. §1505, the interview, if part of a legally sufficient investigation, is itself the proceeding which is impeded when one provides false information. Clearly then, the ability of a false statement to impede and obstruct under Section1505 is far more direct and requires fewer steps to prove than under Section 1503. Therefore, these cases do not compel dismissal of Counts Five and Six.

2.    *Lies in This Case Are Capable Of Obstructing Justice*

The two cases relied upon by the defense were also both decided before Congress enacted subsection (b) of 18 U.S.C. § 1515, which explicitly includes false statements to investigators as a form of corrupt impediments. Thus, in the D.C. Circuit, lies to investigators about a

---

[6] While the <u>Wood</u> court on its face was addressing sufficiency of allegations, it was making its determination after a trial had occurred. The Court engaged in a factual analysis of what effect the statements could have had, which analysis necessarily included information from beyond the indictment. No court the government could identify has used the particular factual analysis of <u>Wood</u> to find that lies to investigators could not possibly impede or obstruct those investigators in a Section 1505 case. This is precisely what the defendants ask this court to do when they say that <u>Wood</u> demonstrates that the current indictment fails to allege a sufficient nexus. (Def. Mot. 22.)

In addition, the <u>Wood</u> court's analysis is internally inconsistent in one respect, where on the one hand it points out the indisputable proposition that an endeavor to impede or obstruct need not be successful, but then on the other hand, it uses the fact that charges were brought and the truth was discovered to negate the possibility of obstruction. 6 F.3d at 695-97. Defendants here similarly suggest that the fact that the Indictment does not allege any actual impediment or obstruction makes the allegations insufficient. The 'catch 22' here is obvious: if defendants had to be successful in their obstruction, then they may never, in fact, have been charged. In any event, the Indictment here clearly alleges an "endeavor" and is sufficient.

defendant's own activities have been held to be sufficient acts to sustain a §1505 conviction. See United States v. Safavian, 528 F.3d 957, 968 (D.C. Cir. 2008) (reversing convictions on other grounds and granting new trial, but holding that evidence that defendant lied to federal agents about the cost of a trip he took with a lobbyist was sufficient to sustain a guilty verdict for obstruction of justice under §1505). The facts and opinion in Safavian are far more applicable than either Wood or Aguilar and demonstrate that the lies alleged in this indictment are certainly of the type that a jury may find meet the necessary elements of the crimes charged.

Defendants also deploy a factual analysis of whether the specific statements alleged could ever be false or misleading. For instance, defendants argue that the definition of "ran" has so many meanings that it is not possible for the statement, "his daughter ran SF&H," to have been misleading. (Def. Mot. 23.) These arguments appear to invoke a "literal truth" defense, i.e., that because the statement could, hypothetically, be literally true, it couldn't possibly impede or obstruct justice, never mind the defendant's intent.

However, as the D.C. Circuit has made clear: "[e]ven a literally true statement may be misleading and so, unlike §1001(a)(1), literal truth may not be a complete defense to obstruction." Safavian, 528 F.3d at 968. Therefore, because it is logically possible for a jury to find, as alleged, that defendant Sunia's actual intent was to mislead and thereby impede or obstruct the agents in finding the truth, the defendants are wrong to claim that the sufficiency of the Indictment depends on the definition of "ran." Because it is alleged as such, the Court must take the allegations as true for purposes of this motion. Wood, 6 F.3d at 694. This applies equally to defendants' irrelevant questions as to how one could unintentionally keep one's name off of a document and the meaning of the term "need basis only." (Def. Mot. 24.)

-26-

3.    *Indictment Does Not Need To Prove the Endeavor to Obstruct*

Defendants also repeatedly complain that the Indictment does not "establish how" the

statements impeded investigations or "demonstrate that Mr. Sunia's first alleged statement . . . is

false," (Def. Mot. 23.), or "allege how anyone might have been misled by the purported

statement. . ." (Def. Mot. 24.)   To the contrary, it is clear that it is not the function of the

Indictment to plead evidence. Cisneros, 26 F.Supp.2d at 49 (citing United States v. Carroll, 332

F.Supp. 1299, 1302 (D.D.C. 1971))   Furthermore, since an endeavor to corrupt need not be

successful in any event, the indictment can not possibly be required to allege what it does not

even have to prove. See Wood, 6 F.3d at 695.

4.    *Indictment Need Not Allege that Defendants Knew Legal Nature of
      Proceeding*

Finally, defendants argue that the Indictment must not only allege but must prove that the

defendants knew that the specific nature of the investigations was of the legal character that

meets the statutory standard.  However, even a case relied upon by the defense as an example of

sufficient investigations points out that such a determination is a legal determination for the

Court, not for the jury.  See United States v. Fruchtman, 421 F.2d 1019, 1021 (6th Cir. 1970).

In any event, the Indictment clearly alleges an investigation into fraud, waste and abuse

by the ASDOE, which is a legally sufficient investigation for Section 1505.  In fact, defendants

do not claim that this investigation is legally insufficient, only that the government must allege

that the defendants knew that it was. (Def. Mot. 26.) This argument is unsupported by any case,

and the cases cited by defendants do not stand for such a proposition.  In short, there is no

authority to suggest that an indictment must allege that a defendant knew the specific legal nature

-27-

of the investigation he was endeavoring to impede.

For all of the above reasons, Counts Five and Six of the Indictment are sufficient, and defendants' motion to dismiss should be denied.

## **CONCLUSION**

For the reasons stated above, defendants' motion to dismiss should be denied in its entirety.

Respectfully submitted,

WILLIAM M. WELCH II
Chief

Dated July 25, 2008          By:      /s/_____
                                       MATTHEW L. STENNES
                                       DANIEL A. SCHWAGER
                                       KATHRYN H. ALBRECHT
                                       Trial Attorneys
                                       Public Integrity Section
                                       Criminal Division
                                       U.S. Department of Justice
                                       1400 New York Avenue, NW, 12th Floor
                                       Washington, DC 20005
                                       Tel.: 202-514-1412

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July 2008, I caused a copy of the foregoing to be filed by Electronic Case Filing (ECF) with the U.S. District Court for the District of Columbia. This system caused an electronic notification and link to be sent to the following:

Lanny Breuer, Esq.
Emily Henn, Esq.
Covington & Burling, LLP
1201 Pennsylvania Ave. NW
Washington, DC 20004

Shelli Peterson, Esq.
Lara Quint, Esq.
Office of the Federal Public Defender
625 Indiana Avenue NW, Suite 550
Washington, DC 20004

By:    /s/_____
       MATTHEW L. STENNES
       Trial Attorney