**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>AITOFELE T.F. SUNIA<br>and TINI LAM YUEN,<br><br>Defendants. | Crim. No. 07-225<br>Judge:  Reggie B. Walton<br><br><u>Oral Argument Requested</u> |

<u>**REPLY MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION**</u>
<u>**OF AITOFELE T.F. SUNIA AND TINI LAM YUEN TO DISMISS**</u>
<u>**IN WHOLE OR IN PART COUNTS ONE THROUGH SIX**</u>

Michelle Peterson
Lara G. Quint
Office of the Federal Public Defender
600 Indiana Ave., NW, Suite 550
Washington, D.C.  20004

*Attorneys for Tini Lam Yuen*

Lanny A. Breuer
Emily Johnson Henn
Covington & Burling LLP
1201 Pennsylvania Ave., NW
Washington, D.C.  20004

*Attorneys for Aitofele T.F. Sunia*

August 22, 2008

# TABLE OF CONTENTS

Page

INTRODUCTION ................................................................................................ 1

ARGUMENT ...................................................................................................... 1

I.   THE GOVERNMENT WRONGLY ATTEMPTS TO SAVE
     COUNT ONE BY ASSERTING FACTS NOT ALLEGED IN THE
     INDICTMENT. ............................................................................................ 1

II.  MR. SUNIA AND MR. YUEN'S POSITIONS WITH THE LEGISLATIVE
     BRANCH DID NOT MAKE THEM AGENTS OF THE EXECUTIVE
     BRANCH DEPARTMENTS IN WHICH THE ALLEGED FRAUD
     OCCURRED. ............................................................................................ 4

III. THERE IS NO LEGITIMATE BASIS FOR EXEMPTING COUNTS TWO,
     THREE, AND FOUR FROM THE FIVE-YEAR LIMITATIONS PERIOD. ........... 9

     A.   The "Continuing Course of Conduct" Standard for Determining
          Whether a Count Is Duplicitous Is Irrelevant Here. ....................... 10

     B.   References to a "Continuing Course of Conduct" in Cases Addressing
          Sentencing and Evidentiary Issues Are Irrelevant Here. ............... 12

     C.   The Violation of § 666(a)(1)(A) Alleged in Count Two Is Not a
          Continuing Offense Under *Toussie*. ............................................ 15

IV.  COUNTS FIVE AND SIX CANNOT SURVIVE BECAUSE THE
     INDICTMENT FAILS TO ALLEGE ESSENTIAL ELEMENTS OF
     18 U.S.C. § 1505 ................................................................................... 19

     A.   The Indictment Does Not Allege That Mr. Sunia or Mr. Yuen Knew
          of or Believed That the Alleged US-DOE Investigation Was Pending
          When They Made Their Alleged Statements. .................................. 20

     B.   The Government Fails to Distinguish *Aguilar* or *Wood*. ............. 21

CONCLUSION .................................................................................................. 23

# TABLE OF AUTHORITIES

Page(s)

CASES

*Bramblett v. United States*,
    231 F.2d 489 (D.C. Cir. 1956) .................................................................................16

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
    509 U.S. 579 (1993) ...............................................................................................11

*Grunewald v. United States*,
    353 U.S. 391 (1957) .................................................................................................1

*Sabri v. United States*,
    541 U.S. 600 (2004) ..............................................................................................4, 5

*Salinas v. United States*,
    522 U.S. 52 (1997) ................................................................................................4, 5

*United States v. Aguilar*,
    515 U.S. 593 (1995) ...................................................................................... *passim*

*United States v. Barlow*,
    470 F.2d 1245 (D.C. Cir. 1972) ............................................................................19

*United States v. Berardi*,
    675 F.2d 894 (7th Cir. 1982) .........................................................................10, 11

*United States v. Bustamante*,
    45 F.3d 933 (5th Cir. 1995) ..................................................................................15

*United States v. Delano*,
    55 F.3d 720 (2d Cir. 1995) ...................................................................................6, 7

*United States v. DiSalvo*,
    34 F.3d 1204 (3d Cir. 1994) ............................................................................13, 14

*United States v. Edgar*,
    304 F.3d 1320 (11th Cir. 2002) ..............................................................................6

*United States v. Ganim*,
    510 F.3d 134 (2d Cir. 2007) ..................................................................................14

*United States v. Harding*,
    81 F.2d 563 (D.C. Cir. 1935) ..................................................................................3

*United States v. Harris*,
   No. 5:07cr1-DCB-LRA, 2007 WL 2028948 (S.D. Miss. July 11, 2007) ............................7, 8

*United States v. Hitt*,
   249 F.3d 1010 (D.C. Cir. 2001) ............................................................................1, 2, 3

*United States v. Jackson*,
   161 F.3d 24 (D.C. Cir. 1998) ...............................................................................12, 13

*United States v. Jennings*,
   160 F.3d 1006 (4th Cir. 1998) ....................................................................................14

*United States v. Jensen*,
   608 F.2d 1349 (10th Cir. 1979) ..................................................................................13

*United States v. Kanchanalak*,
   37 F. Supp. 2d 1 (D.D.C. 1999) ..................................................................................21

*United States v. Klat*,
   156 F.3d 1258 (D.C. Cir. 1998) ..................................................................................11

*United States v. Lipscomb*,
   299 F.3d 303 (5th Cir. 2002) ........................................................................................6

*United States v. McGoff*,
   831 F.2d 1071 (D.C. Cir. 1987) ..................................................................................19

*United States v. Nash*,
   115 F.3d 1431 (9th Cir. 1997) ...............................................................................15, 16

*United States v. Niven*,
   952 F.2d 289 (9th Cir. 1991) ......................................................................................18

*United States v. Pease*,
   No. CR-07-757-PHX-DGC, 2008 WL 808683 (D. Ariz. Mar. 24, 2008) ..............................18

*United States v. Phillips*,
   219 F.3d 404 (5th Cir. 2000) ....................................................................................4, 7

*United States v. Poindexter*,
   951 F.2d 369 (D.C. Cir. 1991) ....................................................................................21

*United States v. Quattrone*,
   441 F.3d 153 (2d Cir. 2006).................................................................................20, 21

*United States v. Raper*,
   676 F.2d 841 (D.C. Cir. 1982) ......................................................................................8

*United States v. Rivlin,*
   No. 07 Cr. 524 (SHS), 2007 WL 4276712 (S.D.N.Y. Dec. 5, 2007) ....................................19

*United States v. Safavian,*
   528 F.3d 957 (D.C. Cir. 2008) ......................................................................................20, 22

*United States v. Scarano,*
   76 F.3d 1471 (9th Cir. 1996) ....................................................................................................18

*United States v. Senffner,*
   280 F.3d 755 (7th Cir. 2002) ....................................................................................................21

*United States v. Shorter,*
   809 F.2d 54 (D.C. Cir. 1987) ...........................................................................................11, 12

*United States v. Shorter,*
   608 F. Supp. 871 (D.D.C. 1985) ...............................................................................................12

*United States v. Smith,*
   373 F.3d 561 (4th Cir. 2004) ....................................................................................16, 17, 18

*United States v. Stein,*
   233 F.3d 6 (1st Cir. 2000) ........................................................................................................15

*United States v. Toussie,*
   397 U.S. 112 (1970) ...................................................................................................... *passim*

*United States v. Vixie,*
   532 F.2d 1277 (9th Cir. 1976) .................................................................................................21

*United States v. Wood,*
   6 F.3d 692 (10th Cir. 1993) .......................................................................................... *passim*

*United States v. Yashar,*
   166 F.3d 873 (7th Cir. 1999) ....................................................................................10, 13, 15

**STATUTES**

15 U.S.C. § 77q(a) ............................................................................................................13

18 U.S.C. § 2 ......................................................................................................................8

18 U.S.C. § 152 ................................................................................................................15

18 U.S.C. § 201 ................................................................................................................15

18 U.S.C. § 641 ...........................................................................................................17, 19

18 U.S.C. § 664 .................................................................................................................19

18 U.S.C. § 666 .......................................................................................................... *passim*

18 U.S.C. § 894 ............................................................................................................13, 14

18 U.S.C. § 1001 ...............................................................................................................16

18 U.S.C. § 1344 ...............................................................................................................16

18 U.S.C. § 1503 ...............................................................................................................21

18 U.S.C. § 1505 ........................................................................................................ *passim*

18 U.S.C. § 1515(b) ..........................................................................................................21

18 U.S.C. § 3282 .....................................................................................................9, 10, 13

18 U.S.C. § 3284 ...............................................................................................................15

26 U.S.C. § 7201 ...............................................................................................................12

Miss. Code Ann. § 9-7-123 .................................................................................................8

Miss. Code Ann. § 9-7-126 .................................................................................................8

## OTHER AUTHORITIES

Brief of the United States, *United States v. Cianci*, Nos. 02-2158, 02-2159, 02-2165,
    2003 WL 23899349 (1st Cir. July 15, 2003) ...........................................................6

Brief of the United States, *United States v. Smith*, No. 03-4650, 2003 WL 25477217 (4th
    Cir. Oct. 29, 2003) ................................................................................................17

## INTRODUCTION

Mr. Sunia and Mr. Yuen's opening memorandum demonstrated that each of the six Counts in the Indictment is fatally flawed in whole or in part. Unable to cite allegations that allow the defective portions of the Indictment to proceed, the government repeatedly asserts that "the evidence at trial" will cure the defects. (*E.g.*, Opp. at 3, 5-6, 9.) These assertions are irrelevant, however, because a motion to dismiss must be resolved based on the Indictment.

To the extent that it attempts to reconcile the allegations in the Indictment with the essential elements of the charged offenses, the government ignores many of the cases cited in Mr. Sunia and Mr. Yuen's opening memorandum – including rulings by the D.C. Circuit. Further, it relies on (and often misconstrues) inapposite cases in an effort to make up for the lack of support for its arguments. The Court should reject the government's attempts to save the defective portions of the Indictment and dismiss each Count in whole or in part.

## ARGUMENT

I.    **THE GOVERNMENT WRONGLY ATTEMPTS TO SAVE COUNT ONE BY ASSERTING FACTS NOT ALLEGED IN THE INDICTMENT.**

Count One should be dismissed in whole or in part because the alleged conspiratorial goal – and thus the conspiracy itself – cannot have existed during the period alleged in the Indictment. The U.S. Supreme Court has made clear that "'the scope of the conspiratorial agreement . . . determines . . . the duration of [a] conspiracy.'" *United States v. Hitt*, 249 F.3d 1010, 1015 (D.C. Cir. 2001) (quoting *Grunewald v. United States*, 353 U.S. 391, 397 (1957)). Applying this principle, the D.C. Circuit held in *Hitt* that any "temporal limitations" in "the Grand Jury's plain statement of the one common goal of [a] conspiracy" necessarily "confine[]" its duration. *Id.* at 1019-21. Under *Hitt*, because the grand jury here defined the conspiratorial goal to entail "using . . . relationships with *the Director of Education and Chief Procurement*

*Officer*" (Indictment ¶ 27 (emphasis added)) – *not* "using relationships with Mr. Sataua and Mr. Seumanutafa" – the alleged conspirators cannot have "act[ed] in furtherance of [their] common goal" before Mr. Sataua and Mr. Seumanutafa assumed their positions, *Hitt*, 249 F.3d at 1017; (Mem. at 9-10).

Similarly, because the conspiratorial goal was defined to include Mr. Sunia and Mr. Yuen "using *their positions* in the ASG" to obtain furniture orders for "companies under their control," the conspiracy cannot have existed during the periods they held positions in the *Legislative* Branch. Under American Samoa law, neither the Counsel to the Fono nor a Member of the Senate has any authority to act on behalf of or control decisions within the Executive Branch Departments where the alleged fraud and bribery occurred. (Mem. at 12-13.) Given that it was therefore impossible for Mr. Sunia and Mr. Yuen to have "act[ed] in furtherance of [their] common goal" during the periods when they held positions in the Legislative Branch, *Hitt*, 249 F.3d at 1017, Count One is fatally flawed to the extent it alleges a conspiracy during those periods. This defect requires dismissal of Count One *in its entirety*, because the Indictment alleges that Mr. Yuen was a Member of the Senate throughout the relevant period, and thus – as a matter of American Samoa law – he cannot have used his position to act in furtherance of the conspiracy at any time.

The government does not address *Hitt*. Instead, it attempts to save Count One by suggesting that (a) Mr. Sataua and Mr. Seumanutafa *knew* as of "late-2000" that they "were about to become . . . Director of Education and Chief Procurement Officer," and (b) there is a "possibility" that "some of the conspiratorial objectives" (none is identified) "could have taken place in the weeks prior to their formally assuming those positions." (Opp. at 5-6.) But the Indictment does not allege these "fact[s]" – there is no suggestion therein that the purported

2

conspiracy was plotted before Mr. Sataua and Mr. Seumanutafa assumed their respective Executive Branch positions. The D.C. Circuit emphasized in *Hitt* that "[t]he court is bound by the language of the indictment" when ascertaining the scope – and thus the duration – of an alleged conspiratorial agreement. 249 F.3d at 1015. Under *Hitt*, moreover, events outside the period in which the conspiratorial purpose existed "may not be relied upon to extend the conspiracy." *Id.* at 1017.

Contrary to the impression the government tries to create (Opp. at 4-6), Mr. Sunia and Mr. Yuen do not argue that the flaw in Count One is the use of the phrase "in or about" when referencing dates. Instead, the argument is that the conspiratorial purpose – and thus the conspiracy – cannot have existed until (i) Mr. Sunia and Mr. Yuen held positions that empowered them to act on behalf of or control decisions within the pertinent Executive Branch Departments *and* (ii) Mr. Sataua and Mr. Seumanutafa held their respective Executive Branch positions.

While it ignores the controlling 2001 ruling in *Hitt*, the government suggests that a case decided over 70 years ago, *United States v. Harding*, 81 F.2d 563, 565 (D.C. Cir. 1935), establishes that "[a] conspiracy may begin prior to all elements being in place," so the conspiracy alleged here may have begun *before* its *purpose* existed. (Opp. at 6.) The issue in *Harding*, however, was whether "a new or separate conspiracy" was created when one defendant joined an existing conspiracy later than the other conspirators. 81 F.2d at 567. The D.C. Circuit held that "[i]t is not essential, in charging conspiracy, to show that *all* of the conspirators participated in the conspiracy at its beginning," so it was irrelevant that "some part of the plan was accomplished in advance of [the one defendant's] participation." *Id.* at 566-67. *Harding* thus

did not address a situation where, as here, the *purpose* of the alleged conspiracy cannot have

existed until particular events occurred.

## II.     MR. SUNIA AND MR. YUEN'S POSITIONS WITH THE LEGISLATIVE BRANCH DID NOT MAKE THEM AGENTS OF THE EXECUTIVE BRANCH DEPARTMENTS IN WHICH THE ALLEGED FRAUD OCCURRED.

The government *does not dispute* that American Samoa law authorizes neither the

Counsel to the Fono nor a single Member of the Senate to "act on behalf of" or "bind" the AS-

DOE, the AS-Treasury, or the Office of Procurement.  *United States v. Phillips*, 219 F.3d 404,

413 (5th Cir. 2000).  The government thus effectively concedes that, during the periods when

Mr. Sunia and Mr. Yuen held those Legislative Branch positions, neither was an "agent" of *any*

of the Executive Branch Departments in which the alleged fraud occurred.  (Mem. at 12-13.)

Whether the Counsel to the Fono and Members of the Senate are agents of the American

Samoa Government *as a whole* – as the government repeatedly insists they are (*e.g.*, Opp. at 1, 8-

10) – is beside the point.  None of the cases cited by the government suggests that § 666(a)(1)(A)

can "reach any government employee who misappropriates purely local funds, without regard to

how organizationally removed the employee is from the particular agency that administers the

federal program."  *Phillips*, 219 F.3d at 411.

Contrary to the impression left by the government (Opp. at 7, 10), neither *Salinas v.

United States*, 522 U.S. 52 (1997), nor *Sabri v. United States*, 541 U.S. 600 (2004), addresses the

meaning of the term "agent" for purposes of § 666.  The issue was not presented in either case

because – in sharp contrast to the situation here – both involved allegations that an official in the

specific government entity that received the requisite federal funds misused (or was asked to

misuse) his authority to act on behalf of that entity.

In *Salinas*, a deputy sheriff who worked at a county jail was convicted of two counts of

accepting bribes in violation of § 666(a)(1)(B) after he arranged for a federal prisoner to have

"so-called 'contact visits'" with female non-prisoners in exchange for "a pair of designer watches and a pickup truck." 522 U.S. at 54-55. The federal prisoner was housed at the county jail pursuant to an agreement under which the government "ma[de] a grant to the county for improving its jail" and paid the county a daily fee for each federal prisoner housed in its jail. *Id.* at 54. The *Salinas* Court rejected the deputy sheriff's argument that "a bribe must affect federal funds before it falls within § 666(a)(1)(B)," explaining that the statute applies to "state and local officials employed by agencies receiving federal funds." *Id.* at 58. Significantly, the Court emphasized that the illegal activity occurred at the federally funded county jail: "We need not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds, for in this case the bribe was related to the housing of a prisoner in facilities paid for in significant part by federal funds themselves." *Id.* at 59.

*Sabri* similarly involved illegal activity relating to the specific entity that employed the pertinent government official and received the requisite federal funds. In *Sabri*, a real estate developer was convicted of three counts of violating § 666(a)(2) after he "offered three separate bribes to a city councilman" within a 15-day period in 2001. 541 U.S. at 602. The councilman "served as a member of [a development agency] created by the city council to fund housing and economic development within the city." *Id.* at 602-03. The developer wanted the councilman – whose agency "received some $23 million of federal money" in 2001 – to authorize "regulatory approvals" and "grants" that would enable the developer "to build a hotel and retail structure in the city." *Id.* Moreover, no issue of statutory interpretation was presented; the developer raised only constitutional claims, primarily that § 666(a)(2) was not "a valid exercise of Article I power" because it failed to "require proof of connection with federal money as an element of the offense." *Id.* at 604. Given this context, the *Sabri* Court did not consider – let alone decide, as

5

the government incorrectly suggests it did – whether, for purposes of the "agent" element under § 666, "it is insignificant specifically where . . . [a] particular defendant worked and where the particular federal funds were housed."  (Opp. at 10.[1])

Nor does any of the court of appeals opinions cited by the government support its position that the relevant entity should be defined at the *broadest possible* level of generality, so that a person can be an "agent" under § 666(a)(1)(A) where, as here, the alleged acts were unrelated to his official responsibilities and occurred in *a separate branch* of the government. For example, the government is incorrect in stating that the defendants in *United States v. Edgar*, 304 F.3d 1320 (11th Cir. 2002), were "agents of [the] city hospital" simply because "*the city overall* received $56 million in federal funds."  (Opp. at 8 (emphasis added).)  To the contrary, the defendants in that case were the "President and Chief Executive Officer" and the "Chief Operating Officer" of the same hospital from which they misappropriated funds, and payments from the federal Medicare program "accounted for approximately forty-five percent of the Hospital's net revenues."  *Edgar*, 304 F.3d at 1323 & n.2.  Likewise, in *United States v. Lipscomb*, 299 F.3d 303 (5th Cir. 2002) (Opp. at 8), the defendant used his position as a member of the Dallas City Council to "cast votes favorable to" a taxicab company in return for bribes from its owner, and "the Council played an integral role" in "Dallas's efforts to obtain and then allocate federal funds."  *Lipscomb*, 299 F.3d at 306-08.  Similarly, in *United States v. Delano*, 55 F.3d 720 (2d Cir. 1995) (Opp. at 8), the defendant "*used his position* as Commissioner of the

---

[1]    Prior to this case, the government has acknowledged that the question of statutory construction in *Phillips* – whether "'there must be some nexus between the criminal conduct and the agency receiving federal assistance'" – is "distinct" from the constitutional questions in *Sabri* regarding the extent to which there must be "a nexus between the criminal conduct and federal funds."  U.S. Br., *United States v. Cianci*, Nos. 02-2158, 02-2159, 02-2165, 02-2166 & 02-2288, 2003 WL 23899349, at *152 (1st Cir. July 15, 2003) (quoting *Phillips*, 219 F.3d at 413-14).

Buffalo Parks Department" to commit "theft of public property" in violation of § 666(a)(1)(A). *Delano*, 55 F.3d at 722-23 (emphasis added).

Here, by contrast, the Indictment does not allege that Mr. Sunia or Mr. Yuen used any official authority conferred by their Legislative Branch positions to commit a violation of § 666(a)(1)(A), or even that either had the ability so to use any such authority. Nevertheless, the government asserts in conclusory fashion that, as Counsel to the Fono and a Senator, Mr. Sunia and Mr. Yuen exercised "oversight over *some aspect* of the fiscal welfare of the territory," *viz.*, unspecified "spending." (Opp. at 2-3 (emphasis added).) The Indictment, however, alleges only that Mr. Sunia exercised such oversight – and only after he became Treasurer on July 9, 2001. (Indictment ¶¶ 10, 12.) Further, nothing in the Indictment supports the notion that either the Counsel to the Fono or a single Senator (or "[t]he territorial senate" *as a whole*, for that matter) "has oversight authority over the ASDOE" or any other Executive Branch Department. (Opp. at 3.)

Although the government does not dispute Mr. Sunia and Mr. Yuen's showing that the Legislative and Executive Branches operate separately pursuant to the American Samoa Constitution (Mem. at 3), it insists that "any analysis of the Fono's particular role in the ASG and its relationship to the executive departments serving as the locus of the fraud" alleged in this case "should take place in a Rule 29 or post-trial setting," observing that the "agent" issue was addressed in such a setting in *Phillips*. (Opp. at 9.) That this purely legal issue was addressed on appeal by the Fifth Circuit in *Phillips*, however, does not mean that it should not be addressed on a motion to dismiss. To the contrary, courts have applied the *Phillips* analysis at the motion-to-dismiss stage. *See, e.g.*, *United States v. Harris*, No. 5:07cr1-DCB-LRA, 2007 WL 2028948 (S.D. Miss. July 11, 2007) (examining Mississippi law to determine, on a motion to dismiss,

whether the circuit clerk of a county in that State was an agent of that county, given that he was "authorized to control some county employees" and "receive[d] county funds to pay deputies" pursuant to Miss. Code Ann. §§ 9-7-123 and 9-7-126). Accordingly, there is no basis for deferring resolution of the "agent" issue here, given the government's failure to dispute that, as a matter of American Samoa law, neither the Legal Counsel to the Fono nor a Member of the Senate may act on behalf of or control any of the Executive Branch Departments at issue. (Mem. at 12-13.)

The government is also incorrect in asserting that Count Two can proceed under an aiding and abetting theory of liability. (Opp. at 10-11.) An essential element of liability under 18 U.S.C. § 2 is that "the accused assisted or participated in the commission of the offense." *United States v. Raper*, 676 F.2d 841, 849 (D.C. Cir. 1982). Although the Indictment alleges that Mr. Sunia and Mr. Yuen were part of a conspiracy, it does *not* allege that either "assisted" or "participated in" acts by the other that violated the "obtains by fraud" provision of § 666(a)(1)(A). Count Two therefore cannot proceed under an aiding and abetting theory as to either of them.

Further, § 2 makes the "commission" of the offense an essential element of liability, so "there must be a guilty principal before a second party can be found to be an aider or abettor." *Raper*, 676 F.2d at 849. In this case, the only persons alleged to have violated § 666(a)(1)(A) are Mr. Sunia and Mr. Yuen. (Indictment ¶¶ 48-49.) Because Mr. Yuen is not alleged to have been an "agent" of one of the relevant Executive Branch Departments – and thus cannot have violated § 666(a)(1)(A) – Mr. Sunia cannot be liable under § 2. Similarly, Mr. Yuen cannot be liable under § 2 for a violation of § 666(a)(1)(A) during a period in which Mr. Sunia was not an "agent."

### III.    THERE IS NO LEGITIMATE BASIS FOR EXEMPTING COUNTS TWO, THREE, AND FOUR FROM THE FIVE-YEAR LIMITATIONS PERIOD.

None of the violations of § 666 alleged in Counts Two, Three, and Four is a "continuing offense" within the meaning of *United States v. Toussie*, 397 U.S. 112 (1970).  Under 18 U.S.C. § 3282(a), therefore, each of these Counts is time-barred insofar as it is based on acts that allegedly occurred more than five years before the Indictment.

The government argues that, because the Indictment charges a "continuing course of conduct," it may prosecute acts of fraud that allegedly occurred before September 6, 2002 in Count Two (Opp. at 11-17) and may prosecute acts of bribery that allegedly occurred before that date in Counts Three and Four (Opp. at 18-21).  But there is no "continuing course of conduct" exception under *Toussie*.  In advocating such an exception, the government wrongly conflates the issue of whether a count is duplicitous with the different issue of whether a count is time-barred.  The "continuing course of conduct" standard applies to the former issue, but not to the latter.  Similarly, and again contrary to the government's arguments, references to a continuing course of conduct in cases addressing sentencing and evidentiary issues are irrelevant here.

The government also attempts to save the untimely portions of Count Two by arguing that a violation of the "obtains by fraud" provision of § 666(a)(1)(A) is a "continuing offense" under *Toussie*.  (Opp. at 17-18.)  But the government does not address the many cases to the contrary cited by Mr. Sunia and Mr. Yuen.  (Mem. at 15-17.)  Instead, it cites cases that either involved prosecutions under statutes materially different from § 666(a)(1)(A) – *e.g.*, under statutes in which Congress used language making clear that it intended for a violation to be treated as a continuing offense – or that did not involve any statute-of-limitations issue.

With respect to Counts Three and Four, by contrast, the government does not argue that bribery in violation of § 666(a)(2) is a continuing offense under *Toussie*.  (Opp. at 18-21.)  The

government thus implicitly concedes – as it must under D.C. Circuit precedent and in light of the positions it has taken in prior cases – that acts of bribery before September 6, 2002 cannot be prosecuted as a "continuing offense" under *Toussie*.  (Mem. at 18-19.)

> **A.**     **The "Continuing Course of Conduct" Standard for Determining Whether a Count Is Duplicitous Is Irrelevant Here.**

    The government asserts that Counts Two, Three, and Four are exempt from the limitations period imposed by § 3282(a) because each of the alleged violations of § 666(a)(1)(A) and (a)(2) is based on what it characterizes as a "continuing course of criminal conduct."  (Opp. at 12-21.)  As the Seventh Circuit has recognized, however, endorsing this assertion would allow prosecutors to circumvent *Toussie* simply by "charging "a 'continuing course of conduct'" and would thus "eviscerate" the Supreme Court's "narrow, selective approach" to exempting offenses from the standard limitations period.  *United States v. Yashar*, 166 F.3d 873, 876-77 (7th Cir. 1999).  Indeed, the government's position would "transform the limitations period from a check on governmental delay in prosecution to a function of prosecutorial discretion," and "the statute of limitations, designed as a control on governmental action, would instead be defined by it."  *Id.* at 878-79.

    It would be inappropriate to apply the "continuing course of conduct" standard to determine whether a prosecution is untimely.  That standard is designed to determine whether a count is duplicitous, not whether a count violates the applicable statute of limitations.  Because the prohibition against duplicity and statutes of limitations serve different purposes, a standard used as to the former should not be used as to the latter.  The cases cited by the government illustrate these points.

    For example, in *United States v. Berardi*, 675 F.2d 894, 898-99 (7th Cir. 1982) (Opp. at 12-13), the Seventh Circuit held that "three episodes or acts" of alleged obstruction of justice,

each of which occurred within a three-month period, were properly charged in the same count because they were part of "a continuing course of conduct" that "occurred within a relatively short period of time." *Berardi*, 675 F.2d at 897-98 & n.4. The *Berardi* court explained that when the alleged offenses "may be said to constitute a continuing course of conduct," joining them in one count is consistent with "the purposes of the prohibition against duplicity." *Id.* at 899 (internal quotation marks omitted). The court stated that those purposes are to avoid "the possibilit[ies] that the defendant may not be adequately notified of the charges against him, that he may be subjected to double jeopardy, that he may be prejudiced by evidentiary rulings at trial, and that he may be convicted by a less than unanimous verdict." In contrast, "[t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time," which "protect[s] individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time" and "minimize[s] the danger of official punishment because of acts in the far-distant past." *Toussie*, 397 U.S. at 114-15.

As with *Berardi*, the government wrongly claims support from D.C. Circuit cases that applied the continuing course of conduct standard to duplicity claims. For instance, in *United States v. Klat*, 156 F.3d 1258, 1266 (D.C. Cir. 1998) (Opp. at 13, 16), the D.C. Circuit held that a count charging "a series" of threats that allegedly occurred within a period of "six months" was "not duplicitous" because the threats were part of "a single, continuing scheme." *Klat*, 156 F.3d at 1266. Likewise, *Shorter* (Opp. at 13) did not address any statute-of-limitations issue. The defendant in that case argued only that a "single-count indictment covering twelve years" of unpaid taxes was "impermissibly duplicitous." *United States v. Shorter*, 809 F.2d 54, 57 (D.C. Cir. 1987), *abrogated on other grounds by Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 585 (1993). The D.C. Circuit disagreed, holding that the alleged acts "could be regarded as

evidencing a continuous course of conduct" because "each affirmative act of tax evasion was intended to evade payment of all taxes owed, or which appellant expected to owe, at the time of the affirmative act."  809 F.2d at 57.[2]

Again confusing the statute-of-limitations issues here with the issue of duplicity, the government characterizes Mr. Sunia and Mr. Yuen as maintaining that it should have charged "separate counts" for each of the acts of fraud and bribery alleged in Counts Two, Three, and Four.  (Opp. at 13-14.)  But Mr. Sunia and Mr. Yuen are objecting not to the inclusion of multiple acts "in a single count" (Opp. at 13), but rather to their prosecution for acts that allegedly occurred more than five years before the Indictment.  Thus, no issue of "multiplicity" (Opp. at 14) would be presented by a ruling that Counts Two through Four are untimely insofar as they are based on acts before September 6, 2002 and accordingly must be dismissed in part.

**B.     References to a "Continuing Course of Conduct" in Cases Addressing Sentencing and Evidentiary Issues Are Irrelevant Here.**

The cases cited by the government in regard to its "continuing course of conduct" arguments are also inapposite.  In *United States v. Jackson*, 161 F.3d 24, 28 (D.C. Cir. 1998) (Opp. at 12-13), the court applied a Sentencing Guidelines provision that, with respect to the

---

[2]     In the district court (but not on appeal), the defendant in *Shorter* argued that his prosecution for 12 years of tax evasion under a statute that prohibited "'willfully attempt[ing] in any manner to evade or defeat any tax imposed by this title'" violated the statute of limitations. 809 F.2d at 56-57 (quoting 26 U.S.C. § 7201).  The district court rejected this argument, reasoning that "an affirmative act of willful evasion" was an "essential element[ ]" of the offense, so "an act constituting evasion which occurs during the limitations period brings the prosecution within the statute of limitations even if the taxes being evaded were due and payable prior thereto."  *United States v. Shorter*, 608 F. Supp. 871, 874 (D.D.C. 1985).  Thus, it was *only* the defendant's affirmative acts *within* the limitations period that allowed him to be prosecuted for failing to pay 12 years' worth of taxes that *remained due.  Id.*

Here, by contrast, the "fraudulently structured invoices" (Indictment ¶ 37) that were allegedly prepared and submitted for payment within the limitations period (*i.e.*, from September 6, 2002 onward) did not evade any obligation under § 666(a)(1)(A) as to acts *before* that date.

12

drug offenses of which the defendant was convicted, "define[d] 'relevant conduct' for determining an offender's base offense level" to "include[ ] acts and omissions 'that were part of the same *course of conduct* or common scheme or plan as the offense of conviction.'"  161 F.3d at 27 (quoting U.S.S.G. § 1B1.3) (emphasis added).  It was in applying this provision that the *Jackson* court observed that "the question of whether conduct in a given case constitutes a 'course of conduct' is inherently fact intensive."  *Id.* at 28; (*compare* Opp. at 12-13 (suggesting that this observation was made in regard to a statute-of-limitations issue)).

Likewise, the government is incorrect in suggesting that *United States v. Jensen*, 608 F.2d 1349, 1355 (10th Cir. 1979), is pertinent to the statute-of-limitations issues in this case. (Opp. at 14, 16 n.4.)  The defendant in *Jensen* was convicted of securities fraud in violation of 15 U.S.C. § 77q(a).  608 F.2d at 1352.  On appeal, he argued that the district court should have excluded evidence of acts more than five years before the indictment pursuant to § 3282.  *Id.* at 1355.  The Tenth Circuit disagreed, ruling that "the evidence on what occurred before the five year period was admissible because it showed representations that made the later omissions misleading."  *Id.*  Its statement that "the statute of limitations is no bar if there is an ongoing scheme continuing into the five year period" (quoted in Opp. at 14) thus related to the *admissibility* of evidence of acts outside the limitations period, *not* to whether those acts could be prosecuted.  *Id.* at 1355-56; *see also Yashar*, 166 F.3d at 878 (describing *Jensen* as "contain[ing] sweeping language indicating that the statute of limitations is no bar where an ongoing scheme continues into the five-year period, but then clarify[ing] that the conviction must rest on post-limitations conduct").

Contrary to the government's implication, *United States v. DiSalvo*, 34 F.3d 1204 (3d Cir. 1994), did not hold that extortionate acts more than five years before the indictment could be

13

prosecuted under a "continuing course of criminal conduct" standard. (Opp. at 14.) The defendants in that case were convicted of violating "the conspiracy and substantive provisions of 18 U.S.C. § 894," which prohibits conspiring to use or using "'*any* extortionate means to collect or attempt to collect any extension of credit.'" 34 F.3d at 1211 (quoting § 894) (emphasis added). The indictment was returned in October 1991, and the alleged conspiracy and substantive violations occurred from December 1985 to March 1987. *Id.* at 1208-10, 1218 & n.9. Given that "any" act of extortion "after October 1986" supported a violation of the statute, the extortionate act in March 1987 was sufficient, and it was "well within the limitations period." *Id.* at 1218-19. The *DiSalvo* court did not state that the defendants could be prosecuted under the substantive provision of § 894 for their extortionate acts prior to October 1986.

Finally, the government errs again in claiming support from cases that (i) did not address any statute-of-limitations issue and (ii) concluded that a series of bribes *within the limitations period* can establish a violation of § 666(a)(2). For example, in *United States v. Jennings*, 160 F.3d 1006 (4th Cir. 1998) (Opp. at 19), the court held that "the evidence was sufficient" to satisfy the "quid pro quo requirement" of § 666. *Jennings*, 160 F.3d at 1010, 1014-15. The indictment in that case was returned within five years of the first bribe: All the bribes occurred in 1993, and oral argument in the defendant's *appeal* occurred on July 11, 1997. *See id.* at 1006, 1011-12. Likewise, no statute-of-limitations issue was presented in *United States v. Ganim*, 510 F.3d 134 (2d Cir. 2007), where the indictment was returned in October 2001 and all the bribes occurred between December 1996 and November 2000. *Id.* at 138-40. The portion of that opinion cited by the government (Opp. at 19 (citing 510 F.3d at 149)) states only that "bribery can be accomplished through an ongoing course of conduct"; nowhere does the opinion suggest

14

that such conduct can affect the running of the limitations period.[3]

**C.    The Violation of § 666(a)(1)(A) Alleged in Count Two Is Not a Continuing Offense Under *Toussie*.**

In *Yashar*, 166 F.3d at 876, the government correctly acknowledged that a violation of the "obtains by fraud" provision of § 666(a)(1)(A) is not a "continuing offense" within the meaning of *Toussie*.  (Mem. at 16.)  It takes a different position here, however, asserting that the violation of that same provision alleged in Count Two is a continuing offense.  (Opp. at 17-18.)  But the cases it cites do not support this assertion.

For example, *United States v. Stein*, 233 F.3d 6, 18-19 (1st Cir. 2000), does not suggest that a "secretive, sustained pattern of fraud" in violation of § 666(a)(1)(A) "can be a continuing offense."  (Opp. at 17-18 (citing *Stein*, 233 F.3d at 18-19).)  *Stein* involved the "concealment" of bankrupt persons' assets in violation of 18 U.S.C. § 152, an offense that Congress had expressly "described as a continuing offense" in a related statute.  233 F.3d at 18 (citing 18 U.S.C. § 3284, which provides that "[t]he concealment of assets of a [bankrupt person] shall be deemed a continuing offense" until certain events occur).  In contrast, there is no "concealment" element in § 666(a)(1)(A), and neither that statute nor any related section of the U.S. Code suggests that Congress intended for a violation of the "obtains by fraud" provision to be treated as a continuing offense.

---

[3]    Nor is application of a continuing course of conduct standard supported by the outlier case of *United States v. Bustamante*, 45 F.3d 933 (5th Cir. 1995).  (Opp. at 14, 19.)  The court in that case deemed the prosecution timely without considering whether the alleged offense – "accepting illegal gratuities" in violation of former 18 U.S.C. § 201(c) (now § 201(b)) – satisfied the *Toussie* test.  Instead, the *Bustamante* court simply asserted that the limitations period did not start running when the elements of the offense were completed because the defendant was "charged with continuing criminal behavior."  45 F.3d at 942.

Similarly, in claiming support from *United States v. Nash*, 115 F.3d 1431, 1441 (9th Cir. 1997) (Opp. at 18), the government declines to mention that the statute at issue in that case, 18 U.S.C. § 1344, included an element that, in the Ninth Circuit's view, made clear that Congress intended that a violation be treated as a continuing offense. The provision under which the defendant in *Nash* was charged "ma[de] it a crime to 'knowingly execute[ ], or attempt[ ] to execute, a scheme or artifice . . . to obtain" money from "a financial institution, by means of false or fraudulent pretenses.'" 115 F.3d at 1436 (quoting § 1344(2)) (alterations and omission in original). In holding that a violation of that provision was "a continuing offense," the Ninth Circuit relied exclusively on the "scheme" element: "Section 1344 punishes the execution of a scheme to defraud or obtain money – language that suggests the violation should be treated as continuing." *Id.* at 1441. Likewise, in *Bramblett v. United States*, 231 F.2d 489, 489 & n.1, 491 (D.C. Cir. 1956), the D.C. Circuit held that a prosecution under 18 U.S.C. § 1001 for a "continuing crime of falsification by a scheme" was not time-barred because the statute contained a "scheme" element, which "reveal[ed] a Congressional intent to reach a pattern of conduct rather than to penalize a series of acts which manifest the pattern." Under the logic of *Nash* and *Bramblett*, the *absence* of a "scheme" element (or any comparable element) in § 666(a)(1)(A) provides further confirmation that Congress did *not* intend for a violation to be treated as a continuing offense.[4]

The decision by a divided panel in *United States v. Smith*, 373 F.3d 561, 567 (4th Cir. 2004) (per curiam), also does not support the proposition for which the government cites it. (*See*

---

[4]    Because § 666(a)(1)(A) does not include a "scheme" element, the government misses the mark in contending that a violation of the statute's "obtains by fraud" provision is a continuing offense "because the conversion of property by fraud typically occurs as part of a scheme to defraud." (Opp. at 18.)

Opp. at 17-18.)  In *Smith*, the panel majority held that the defendant committed a "continuing" violation of 18 U.S.C. § 641, which prohibits embezzling Social Security Administration funds, because he "set into place and maintained an *automatically recurring scheme* whereby funds were electronically deposited in his account" – "*without need for affirmative acts linked to any particular receipt of funds*."  373 F.3d at 568 (emphases added).  The government's brief in *Smith* stated that the "automatically recurring" nature of the defendant's acts of embezzlement rendered his case unlike one where, as alleged here, funds were obtained on a periodic basis as a result of contemporaneous decisions and acts.  *See* U.S. Br., *United States v. Smith*, No. 03-4650, 2003 WL 25477217, at *13-14 (4th Cir. Oct. 29, 2003) ("a mechanism which, when put into operation, will result in the taking or diversion of sums of money on a recurring basis, will produce but one crime," whereas "the nature of the acts must be measured by the separate takings" where "an original intent to purloin" was "acted on from time to time") (internal quotation marks omitted).

Unlike *Smith*, the Indictment in this case does not allege that the timing or amounts of the purportedly fraudulent orders followed any identifiable pattern, let alone one that was regular and automatic.  For instance, SFH allegedly submitted invoices on October 11, 2000, December 4, 2000, and February 8, 2001, with each of the three invoices pertaining to furniture for a different school.  (Indictment ¶ 37(a)-(c).)  In contrast to the one-month gaps between these school-specific invoices, SFH allegedly submitted an invoice on October 4, 2001 for regular-size benches provided to three different schools (*id.* ¶ 37(m)), and one week later submitted another invoice for high-school-size benches provided to a fourth school (*id.* ¶ 37(p)).  On the other hand, SFH is not alleged to have submitted a single invoice during the seven months between May 16, 2003 and November 5, 2003.  (*Id.* ¶ 37(nn), (pp).)  Similarly, TLY allegedly submitted

two separate sets of invoices within just over a month in 2001 (*id.* ¶ 37(i)-(j) (May 25, 2001 and July 2, 2001), but is not alleged to have submitted a single invoice between January 22, 2003 and June 18, 2003 (*id.* ¶ 37(jj), (oo)).[5]

More fundamentally, the panel majority in *Smith* misapplied the "nature of the crime" inquiry under *Toussie* in two distinct ways. *First*, it reasoned that "[e]mbezzlement is the type of crime that, to avoid detection, *often* occurs over some time and in relatively small, but recurring, amounts." 373 F.3d at 567 (emphasis added). But "often" is not the same as "always," and the inquiry under *Toussie* is whether there is something "inherent in the act" at issue that "makes [it] a continuing crime." *Toussie*, 397 U.S. at 122. *Second*, as noted above, the panel majority in *Smith* relied heavily on the charged conduct, whereas under *Toussie* it is "the nature of the crime involved" – not the allegations in a particular case – that is dispositive. *Id.* at 115; *see also, e.g.*, *United States v. Niven*, 952 F.2d 289, 293 (9th Cir. 1991) (per curiam) (rejecting contention that the charged conduct made defendant's mail fraud and wire fraud "continuing offenses" because *Toussie* "makes clear" that the continuing offense "analysis turns on the nature of the substantive offense, not on the specific characteristics of the conduct in the case at issue"), *overruled in part on other grounds by United States v. Scarano*, 76 F.3d 1471, 1477 (9th Cir. 1996)).

The government also errs in claiming support from the proximity of the "obtains by fraud" provision in § 666(a)(1)(A) to the provisions regarding "embezzlement and stealing," which it insists are "both continuing offenses." (Opp. at 18.) Neither offense is a continuing one, however. *See, e.g.*, *United States v. Pease*, No. CR-07-757-PHX-DGC, 2008 WL 808683,

---

[5]    That the Indictment fails to allege any ascertainable pattern as to the timing and amounts of the furniture orders belies the government's assertion (which is not supported by the paragraph it cites) that the orders were part of "a single, ongoing project." (Opp. at 2 (citing Indictment ¶ 27, which alleges only that the conspiracy was designed to secure "lucrative payments" for "companies under the[ ] control" of the purported conspirators).)

at *2-3 (D. Ariz. Mar. 24, 2008) ("conversion of government funds" in violation of the first paragraph of 18 U.S.C. § 641 is not a continuing offense); *United States v. Rivlin*, No. 07 Cr. 524 (SHS), 2007 WL 4276712, at *2, *5 (S.D.N.Y. Dec. 5, 2007) (same as to a violation of the embezzlement prohibition in 18 U.S.C. § 664); (Mem. at 17).  To the contrary, both embezzlement and stealing can occur through "instantaneous events," *Toussie*, 397 U.S. at 122, and are thus indistinguishable from larceny.  (*See* Mem. at 16-17.)  As the D.C. Circuit explained in *McGoff* – which the government omits from its discussion of this issue but cites elsewhere (Opp. at 11, 17) – "a larceny is completed as soon as there has been an actual taking of the property of another without consent, with the intent permanently to deprive the owner of its use." 831 F.2d 1071, 1078 (D.C. Cir. 1987).

While it ignores the D.C. Circuit's recognition in *McGoff* that larceny is *not* a continuing offense under *Toussie*, the government wrongly suggests that an earlier case, *United States v. Barlow*, 470 F.2d 1245, 1250 (D.C. Cir. 1972), held that "larceny is a continuing offense" for statute-of-limitations purposes.  (Opp. at 18.)  "The sole point raised by" the defendant in *Barlow*, however, was whether the evidence was sufficient to support his conviction for aiding and abetting a theft of government property; he maintained that the evidence supported only a conviction as "an accessory after the fact," for which he would have received a shorter sentence. 470 F.2d at 1248-49.  The *Barlow* court had no occasion to address whether larceny was a continuing offense for statute-of-limitations purposes, and it did not mention *Toussie*.

## IV.    COUNTS FIVE AND SIX CANNOT SURVIVE BECAUSE THE INDICTMENT FAILS TO ALLEGE ESSENTIAL ELEMENTS OF 18 U.S.C. § 1505.

The Indictment fails to allege either (i) that Mr. Sunia or Mr. Yuen were aware of the alleged US-DOE investigation when they made their purported statements or (ii) that their purported statements had the natural and probable effect of obstructing that investigation.

Because (i) and (ii) are each essential elements of a violation of 18 U.S.C. § 1505, Counts Five and Six should be dismissed.

In attempting to save these defective Counts, the government misstates the elements of a § 1505 violation and fails to refute Mr. Sunia and Mr. Yuen's showing (Mem. at 21-24) that *Aguilar* and *Wood* support dismissal.

**A.    The Indictment Does Not Allege That Mr. Sunia or Mr. Yuen Knew of or Believed That the Alleged US-DOE Investigation Was Pending When They Made Their Alleged Statements.**

A defendant cannot be convicted of violating § 1505 unless he "knew of or believed that the "proceeding" he allegedly obstructed was "pending before a department or agency of the United States." *United States v. Quattrone*, 441 F.3d 153, 174 (2d Cir. 2006). The parties agree that the "proceeding" that Mr. Sunia and Mr. Yuen allegedly obstructed was an investigation by the US-DOE. (Mem. at 26; Opp. at 4.) Counts Five and Six cannot survive dismissal, therefore, unless the Indictment alleges that Mr. Sunia and Mr. Yuen "knew of or believed that the [US-DOE] proceeding was pending." *Quattrone*, 441 F.3d at 174. But no such allegation appears in the Indictment, which alleges only that Mr. Sunia and Mr. Yuen submitted to voluntary interviews with "federal law enforcement agents" – none of whom was from the US-DOE. (Indictment ¶¶ 57, 62.)

The Indictment's failure to allege that Mr. Sunia or Mr. Yuen knew of the US-DOE proceeding is not merely a failure to allege the "specific legal nature" of the investigation. (Opp. at 27-28.) In contrast to the situation here, the typical § 1505 case involves an agency conducting an investigation into activities within its purview, so that interviewees are necessarily aware of the pending investigation. For example, in *United States v. Safavian*, 528 F.3d 957 (D.C. Cir. 2008), the primary case on which the government relies, the defendant was charged with violating § 1505 for allegedly lying to an agent from the General Services Administration

20

("GSA") during an interview that the defendant *knew* was part of an investigation by the GSA. *Id.* at 961-62; *see also, e.g.*, *United States v. Vixie*, 532 F.2d 1277 (9th Cir. 1976) (submitting false document in response to IRS subpoena).  Here, by contrast, the Indictment does not allege that Mr. Sunia or Mr. Yuen knew or had any basis for knowing that the US-DOE investigation was pending.  Because the essential element of knowledge of the pending "proceeding" is therefore absent, Counts Five and Six should be dismissed.

### B.    The Government Fails to Distinguish *Aguilar* or *Wood*.

For several reasons, the government fails in its efforts to distinguish *United States v. Aguilar*, 515 U.S. 593 (1995), and *United States v. Wood*, 6 F.3d 692 (10th Cir. 1993).  *First*, that both cases involved § 1503, not § 1505, is irrelevant.  It is firmly established that *Aguilar*'s nexus requirement – which the Supreme Court derived from *Wood* – applies in the § 1505 context.  *See, e.g., Quattrone*, 441 F.3d at 174 (citing *Aguilar* in holding that § 1505 "includ[es] the judicially grafted nexus requirement"); *United States v. Senffner*, 280 F.3d 755, 762 (7th Cir. 2002) (under *Aguilar*, § 1505 requires that defendant's statements "had the 'natural and probable' effect of interfering" with proceeding).

*Second*, contrary to the government's suggestion (Opp. at 25-26), the enactment of 18 U.S.C. § 1515(b) in 1996 did not undermine *Aguilar* or *Wood*.  *See United States v. Kanchanalak*, 37 F. Supp. 2d 1, 3 (D.D.C. 1999) (explaining that Congress enacted § 1515(b) in response to *United States v. Poindexter*, 951 F.2d 369 (D.C. Cir. 1991), which held that the word "corruptly" was unconstitutionally vague).  Mr. Sunia and Mr. Yuen do not argue that lying to agency officials cannot constitute a violation of § 1505.  (*Compare* Opp. at 25-26 (suggesting they make such an argument).)  Rather, they contend that given the informal context – voluntary interviews in Mr. Sunia's office and Mr. Yuen's residence – and the vague content, their alleged statements cannot have had the "natural and probable effect" of obstructing justice.  *Wood* –

21

which, as noted above, was the primary basis for the Supreme Court's ruling in *Aguilar* –
directly supports this conclusion. *See Wood*, 6 F.3d at 696-97 (dismissing obstruction of justice
count because, as a matter of law, allegedly false or misleading statements made to FBI agents
during voluntary interview in defendant's "own office" could not have had the "natural and
probable effect of impeding the due administration of justice").

       *Safavian*, the primary case on which the government relies in attempting to save Counts
Five and Six, does not suggest otherwise. To the contrary, in *Safavian* the D.C. Circuit *reversed*
the defendant's § 1505 conviction. 528 F.3d at 968. Furthermore, the alleged obstruction in
*Safavian* involved statements that the defendant allegedly made to an agent from a federal
agency – the GSA – during an investigation by that agency. *Id*. at 961-62. In contrast, the
Indictment in this case does not allege that anyone from the US-DOE interviewed Mr. Sunia or
Mr. Yuen.

       *Finally*, contrary to the government's suggestion that *Wood* considered facts outside the
indictment (Opp. at 25 n.6), the Tenth Circuit decided the case *on a motion to dismiss* and
therefore "accept[ed] as true the government's allegations made in the indictment." *Wood*, 6
F.3d at 694. Nor is there anything "internally inconsistent" (Opp. at 25 n.6) in that decision.
The Tenth Circuit did not hold that the defendant could be charged only if he successfully
obstructed the investigation, and Mr. Sunia and Mr. Yuen do not contend that either. However,
the fact that the government's alleged investigation in this case began nearly two years before the
interviews of Mr. Sunia and Yuen occurred and that one or both of their alleged co-conspirators,
Fa'au Seumanutafa and Sili Sataua, had been charged before the interviews took place supports
the conclusion that the government could not have relied on the allegedly false or misleading
statements that Mr. Sunia or Mr. Yuen purportedly gave to federal law enforcement agents.

Moreover, the Supreme Court grounded its decision in *Aguilar* in large part on the holding in *Wood*, another factor that supports the consistency and logic of the Tenth Circuit's decision.

### <u>CONCLUSION</u>

For the foregoing reasons and those stated in Mr. Sunia and Mr. Yuen's opening memorandum, the Court should (i) dismiss Count One in its entirety (because, as a matter of American Samoa law, the alleged conspiratorial goal of using Mr. Sunia and Mr. Yuen's respective Legislative Branch positions to make Executive Branch decisions could not have existed), or, in the alternative, to the extent that it is based on acts that allegedly occurred before January 4, 2001 (because that is the earliest possible date on which the alleged conspiratorial goal of using Mr. Sunia and Mr. Yuen's relationships with the Director of Education and Chief Procurement Officer in furtherance of the conspiracy can have existed); (ii) dismiss Count Two in part as to Mr. Sunia (for failure to allege that he satisfied the "agent" element before July 9, 2001) and in its entirety as to Mr. Yuen (for failure to allege that he satisfied that element at any time); (iii) dismiss Counts Two through Four as time-barred insofar as they are based on acts that allegedly occurred before September 6, 2002; and (iv) dismiss Counts Five and Six for failure to allege essential elements of a violation of 18 U.S.C. § 1505.

Respectfully submitted,

| | |
|---|---|
| _____/s/_____ | _____/s/_____ |
| Michelle Peterson | Lanny A. Breuer |
| Lara G. Quint | Emily Johnson Henn |
| Office of the Federal Public Defender | Covington & Burling LLP |
| 600 Indiana Ave., NW, Suite 550 | 1201 Pennsylvania Ave., NW |
| Washington, DC 20004 | Washington, DC 20004 |
| | |
| *Attorneys for Tini Lam Yuen* | *Attorneys for Aitofele T.F. Sunia* |

August 22, 2008

23

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of August, 2008, I caused a copy of the foregoing

Reply Memorandum of Law to be filed by Electronic Case Filing (ECF) with the U.S. District

Court for the District of Columbia.  This system caused an electronic notification and link to be

sent to the following:


Michelle Peterson                         Matthew L. Stennes
Lara G. Quint                             Daniel A. Schwager
Office of the Federal Public Defender     Kate H. Albrecht
600 Indiana Ave., NW, Suite 550           U.S. Department of Justice
Washington, D.C.  20004                   Criminal Division, Public Integrity Section
                                          1400 New York Ave., NW, Suite 12100
                                          Washington, D.C.  20005


*Attorneys for Tini Lam Yuen*             *Attorneys for the United States*


                                          By:    _____/s/_____


                                                 Emily Johnson Henn